UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
HIGH FARMS, LLC,

                           Plaintiff,

          -against-

GWENDOLYN KING,

                           Defendant.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**16-CV-736 (NGG) (PK)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff High Farms, LLC ("High Farms") brings this action against Defendant Gwendolyn King alleging breach of contract, failure to repay a loan, unjust enrichment, and the existence of a constructive trust. (Am. Compl. (Dkt. 50).) Before the court is Defendant's motion to dismiss the amended complaint for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5) and for failure to state a claim pursuant to Rule 12(b)(6) (the "Motion"). (Mot. to Dismiss ("Mot.") (Dkt. 54).) For the following reasons, Defendant's motion to dismiss is DENIED.

## I. BACKGROUND

### A. Factual Allegations

Plaintiff High Farms is a limited liability company based in Glen Head, New York. (Am. Compl. ¶ 2.) Defendant Gwendolyn King is a citizen of Florida. (Id. ¶ 12.) At the time this action began, aggregate membership interest in High Farms was split between (1) John D. Higgins, (2) the JDH 2012 Irrevocable Family trust, (3) the Madeline Higgins Irrevocable Family Trust, and (4) the John D. Higgins Revocable Trust.[1] (Id. ¶ 4.) Following John D.

---

[1] The complaint does not provide background on, or describe the nature of, these trusts. Laurence Higgins claims he controls at least a 75.5% interest in High Farms as the sole trustee of the John D. Higgins Revocable Trust, sole

1

Higgins's death on November 5, 2016, his High Farms interest passed to the Estate of John D. Higgins. (Id. ¶¶ 6-7.)

The ownership and control of these High Farms membership interests are the subject of two cases currently being litigated in the Supreme Court of the State of New York, County of Nassau, and the Surrogate's Court of the State of New York, County of Nassau. (Id. ¶ 18.) This case was brought in the name of High Farms at the direction of Laurence Higgins, who—in the aftermath of John D. Higgins's death—claims to control a majority interest in High Farms. (Id. ¶ 17.) Despite his claim, Madeline Higgins—who is Defendant's sister and John D. Higgins's ex-wife—claims to own a 25.5% interest in High Farms, and Gwenda A. Higgins—Defendant's niece—claims control of 24.5% of the membership interest as the sole trustee of the JDH 2012 Irrevocable Family Trust. (Id. ¶¶ 14, 18.)

Until his death, John D. Higgins was the managing member of High Farms. (Id. ¶ 22.) Plaintiff alleges that, in or around January 2014, Defendant asked John D. Higgins for a loan of $285,000 to help her move to Florida while she sold her home in Nissequogue, New York. (Id. ¶¶ 23-25.) John D. Higgins could not personally loan her the funds but, as managing member of High Farms, agreed to have High Farms make the loan for her. (Id. ¶ 26.) According to Plaintiff, the terms of the loan provided for the $285,000 principal to accrue interest at an annual rate of 2%; upon the sale of Defendant's property in Nissequogue, Defendant would repay the outstanding principal and accrued interest on the loan. (Id. ¶ 27.) Defendant promised to use the proceeds of the sale of the Nissequogue property to repay the loan. (Id. ¶ 28.) On January 13, 2014, John D. Higgins issued two checks from High Farm's bank account to Defendant totaling $285,000. (Id. ¶ 29.)

---

trustee of the Madeline Higgins Irrevocable Family trust, and Preliminary Executor of the estate of John D. Higgins. (Pl. Opp'n ("Opp'n") (Dkt. 55-1) at 13.)

On or around March 2015, John D. Higgins learned from a third party that Defendant had sold her house in Nissequogue. (Id. ¶ 32.) Upon learning this, John D. Higgins allegedly telephoned Defendant and demanded repayment of the loan from High Farms, to which Defendant responded that she would discuss repayment another time. (Id. ¶¶ 34-35.) Plaintiff claims Defendant again said she would discuss the issue another time when John D. Higgins demanded repayment a second time. (Id. ¶ 36.) On August 18, 2015, High Farms then sent a letter to Defendant demanding that she repay the loan; Defendant allegedly refused to accept delivery of the letter. (Id. ¶ 37.)

Plaintiff then brought this action and hired Don Phillips to serve process to Defendant, who made four attempts to deliver process in person. (Aff. of Don Phillips (Decl. of Frank T. Santoro, Ex. 2) (Dkt. 55 at ECF p.15).) When Don Phillips was unable to effectuate personal service, he confirmed with the security guard of Defendant's condominium that it was indeed Defendant's residence, affixed a copy of the summons and complaint to the door of Defendant's residence, and mailed another copy to the same address three days later. (Id.)

### B. Procedural History

Plaintiff commenced this action on February 11, 2016. (See Compl. (Dkt. 1).) On May 15, 2018, Plaintiff filed an amended complaint alleging breach of contract, failure to repay a loan, and unjust enrichment, and requesting the imposition of a constructive trust. (See Am. Compl ¶¶ 40-59.) Defendant then submitted a motion to dismiss, which was fully briefed on August 13, 2018. (See Mot.; Pl. Opp'n ("Opp'n") (Dkt. 55-1); Def. Reply (Dkt. 56).) Defendant argues that dismissal is appropriate because she was not properly served process and because High Farms—Plaintiff in this case—lacked proper authorization by its members to hire counsel and bring this action. (Def. Mem. in Supp. of Mot. to Dismiss ("Mem.") (Dkt. 54-1) at 4.)

3

Alternatively, Defendant requests that the court stay this case until New York State courts determine the correct distribution of High Farms membership interests. (Mem. at 5-6.) Plaintiff does not believe a stay is warranted because it, in its view, it would have standing to maintain this action regardless; nonetheless, it "does not oppose a stay if the [c]ourt deems it is appropriate." (Opp'n at 14.)

## II. DISCUSSION

### A. Whether King Was Properly Served Process

#### 1. Legal Standard

In deciding whether service was proper, the court looks to New York law. See Fed. R. Civ. P. 4(e)(1). Among other valid forms of service, New York allows "nail and mail service" when other forms of service cannot be achieved with due diligence, whereby a summons is affixed to the door of either the actual place of business, dwelling place, or usual place of abode within the state of the person to be served and an additional summons is mailed to the person at their place of business. N.Y. Civil Practice Law and Rules, § 308(4) (McKinney 2019).

Insufficiency of process may provide grounds for the dismissal of a lawsuit. See Fed. R. Civ. P. 12(b)(5); Preston v. New York, 223 F. Supp. 2d 452, 466 (S.D.N.Y. 2002). When a defendant raises a Rule 12(b)(5) "challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy." Preston, 223 F. Supp. 2d at 466 (citing Howard v. Klynveld Peat Marwick Goerdeler, 977 F. Supp. 654, 658 (S.D.N.Y. 1997), aff'd, 173 F.3d 844 (2d Cir. 1999)). But in New York, a process server's affidavit of service constitutes prima facie evidence of proper service. See Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc., 301 F.3d 54, 57 (2d Cir. 2002). "A defendant's sworn denial of receipt of service, however, rebuts the presumption of proper service established by the process server's affidavit and necessitates an

4

evidentiary hearing." Id. (citation omitted). "But no hearing is required where the defendant fails to swear to specific facts to rebut the statements in the process server's affidavits." Id. at 58 (citation and quotation marks omitted).

2. Application

Defendant declares under penalty of perjury that she was "never served" because "[t]here was nothing posted on [her] door, and [she] did not receive the summons or the complaint in the mail." (Decl. of Gwendolyn King ("King Decl.") (Dkt. 54-3) ¶¶ 11-14; see Mem. at 2.) Accordingly, she claims, this court lacks jurisdiction over her. (Id.)

The court disagrees. Plaintiff has submitted an affidavit of service by a hired process server, which constitutes prima facie evidence of service. (See Aff. of Don Phillips.) Old Republic, 301 F.3d at 57. Though a sworn denial of receipt of service can create an issue of fact meriting an evidentiary hearing, "no hearing is required where the defendant fails to swear to specific facts to rebut the statements in the process server's affidavits." Old Republic, 301 F.3d at 57-58 (citation and quotation marks omitted).

Defendant failed to do that here because her sworn statement is too bare and facile to merit an evidentiary hearing. She asserts that "[t]here was nothing posted to [her] door," but does not dispute the process server's sworn statements that he attempted personal service at four separate dates and times outside of typical working hours, that she was not home at those times, and that the server confirmed her address with a security guard and was told that "she must be on vacation" before affixing process to her door. (King Decl. ¶ 12.) Nor does she identify any evidence that she would adduce at an evidentiary hearing. Without any indication that there might be evidence to the contrary, an evidentiary hearing on the issue of proper "nailing" would

5

be unavailing.² Similarly, she states that she "did not receive the summons or the complaint in the mail." (King Decl. ¶ 12.) That is inadequate to overcome the inference of proper mailing arising from the server's affidavit. Washington Mut. Bank v. Huggins, 35 N.Y.S.3d 127, 128 (N.Y. App. Div. 2016) (citing European Am. Bank v. Abramoff, 608 N.Y.S.2d 233, 234 (N.Y. App. Div. 1994); Colon v. Beekman Downtown Hosp., 490 N.Y.S.2d 581, 583 (N.Y. App. Div. 1985)) (rejecting as inadequate the defendant's "conclusory assertion that he did not receive the mailed papers"). Consequently, the court denies Defendant's motion to dismiss for insufficient service of process without an evidentiary hearing.

### B. Whether Laurence Higgins Has Authority to Maintain This Action in High Farm's Name

#### 1. Legal Standard

##### a. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), the Amended Complaint must present sufficient facts that, when accepted as true, "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Accordingly, for the purposes of deciding Defendants' motion, the court "accept[s] all factual allegations in the [c]omplaint as

---

² In prior cases in which an evidentiary hearing was granted for determining whether "nail of mail" service was proper, the defendant swore to specific allegations that: (1) The location to which process was affixed was not their actual dwelling place or usual place of abode, see e.g., Aurora Loan Servs., LLC v. Gaines, 962 N.Y.S.2d 316, 319 (N.Y. App. Div. 2013) (a defendant's statements that she had never resided at the address where the process server attempted personal service and affixed the papers, and had lived at another address for more than 20 years, were sufficient to merit an evidentiary hearing); (2) the door to which process was affixed was not the correct door to their dwelling, see, e.g., Costa v. Franklin Gen. Hosp., 502 N.Y.S.2d 795, 796 (N.Y. App. Div. 1986) (finding, after an evidentiary hearing, that the "nailing" of process was to the wrong door); (3) the method of affixing service to the door was inadequate, see e.g., Werner v. Schweit, 526 N.Y.S.2d 175, 175 (N.Y. App. Div. 1988) (affirming district court's decision, after a hearing, that the "mere slipping of the papers between the screen door and the door jamb was not a proper 'affixing' as required by the statute"); or (4) due diligence to attempt personal service was not done prior to resorting to "nail and mail" service, see, e.g., Serraro v. Staropoli, 943 N.Y.S.2d 201, 204 (N.Y. App. Div. 2012) (ruling, after a hearing, that the process server had not shown due diligence because he did not inquire as to the defendants' work schedules or their respective business addresses, and attempted personal service on weekdays during hours when it reasonably could have been expected that the defendants were at work). Each of these allegations speak to the sufficiency of service by rebutting specific facts in the process server's affidavit. In this case, Defendant stated no specific facts to rebut the ones in the process server's affidavit.

true" and will "draw all reasonable inferences in [Plaintiff's] favor." L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 429 (2d Cir. 2011) (citation and internal quotation marks omitted). The court is not, however, required to accept as true allegations that amount to "legal conclusions couched as a factual allegation" or "naked assertion[s] devoid of further factual enhancement." See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint falls short of this standard when its well-pleaded factual allegations are "merely consistent with" or suggest the "possibility" that a defendant is liable. Id. (internal citation and quotation marks omitted). A plaintiff must therefore plead sufficient factual content to "nudge[]" their claim "across the line from conceivable to plausible." Id. at 680 (quoting Twombly, 550 U.S. at 570).

      b.    *Authority to Initiate Lawsuits on Behalf of a Limited Liability Corporation*

A New York Limited Liability Corporation ("LLC") is bound by the default rules listed in the New York Limited Liability Company Law where applicable, unless as provided in the company's operating agreement. See In re Eight of Swords, LLC, 946 N.Y.S.2d 248, 249 (N.Y. App. Div. 2012) (citing, inter alia, N.Y. Limited Liability Company Law ("N.Y. LLC Law") §§ 401-704 (McKinney 2019)). The default rules state that "every member is an agent of the limited liability company for the purpose of its business, and the act of every member, including the execution in the name of the limited liability company of any instrument, for apparently carrying on in the usual way the business of the limited liability company, binds the limited liability company." N.Y. LLC Law § 412(a). Conversely, "[a]n act of a member or manager that is not apparently for the carrying on of the business of the limited liability company in the

7

usual way does not bind the limited liability company unless authorized in fact by the limited liability company in the particular matter." N.Y. LLC Law § 412(c).

2. Application

According to Defendant, N.Y. LLC Law § 402 requires that a majority-in-interest of an LLC's members must vote to hire counsel and begin a lawsuit in the absence of an operating agreement provision stating otherwise. (Mem. at 4-5.) The court reads the law differently. Sections 402(c) and 402(d) list six types of actions that an LLC may take only with the vote of a majority in interest of its members. Hiring counsel and bringing suit are not listed among these.

Because there is no affirmative requirement that an LLC's members vote to approve the hiring of counsel and bringing a lawsuit, the default rule of § 412 applies: an LLC member is entitled to execute "any instrument[] for apparently carrying on in the usual way the business of the limited liability company." Er-Loom Realty, LLC v. Prelosh Realty, LLC, 24 Misc. 3d 1231(A), 2009 WL 2385379, at *4 (N.Y. Sup. Ct. 2009) (quoting N.Y. LLC Law § 412(a)).

Defendant argues that a 2008 New York Supreme Court case stands for the proposition that, where co-equal owners disagree about whether to hire counsel, counsel may not be hired. (Mem. at 5 (citing Caplash v. Rochester Oral & Maxillofacial Surgery Assocs., 20 Misc. 3d 1104(A), 2008 WL 2468553, at *8-9 (N.Y. Sup. Ct. June 20, 2008).) The court does not read Caplash to have held that all LLCs require majority-in-interest votes to hire counsel. On appeal, the Appellate Division clarified that the LLC member at issue was not authorized to hire counsel because the appointment "was neither for carrying on the usual business of the company, i.e., dental surgery, nor, as required by the terms of the operating agreement, sanctioned by majority vote of the company's members." Caplash v. Rochester Oral & Maxillofacial Surgery Assocs. LLC, 881 N.Y.S.2d 270, 272 (N.Y. App. Div. 2009). In other words, Caplash stands for the

8

proposition that counsel may not be hired outside the usual business of the company, in accordance with N.Y. LLC Law § 412. Whether hiring counsel was part of the "usual business of the company" was a <u>factual</u> question, not a legal one, in <u>Caplash</u>. Likewise, whether hiring counsel and bringing this action was part of High Farms's "usual business" is a question of fact that must be construed in Plaintiff's favor for purposes of this motion to dismiss. See <u>L-7 Designs</u>, 647 F.3d at 429.

Assuming that he was acting in the usual business of the company, John D. Higgins—an undisputed member of High Farms—was within his authority under § 412 when he hired counsel and brought this case. (Am. Compl. ¶¶ 36-37.) Further, Laurence Higgins—another High Farms member—may maintain this action so long as no other member tries to withdraw it. Thus, the court denies Defendant's motion to dismiss this case on the basis that Laurence Higgins lacks the authority to maintain this suit in High Farms's name. Should another High Farms member try to dismiss this suit, the court would have to decide whether that would override Laurence Higgins's desire to maintain it; that issue is not yet before the court.

### C. Whether This Case Should Be Stayed

Alternatively, Defendant asks the court to stay this case pending the resolution of the two New York State cases that will determine the correct distribution of High Farms membership interests. (Mem. at 5-6.) She notes that once the state-court cases are resolved, this court will be better able to determine whether Laurence Higgins is authorized to maintain this suit. (<u>Id.</u>) Plaintiff believes a stay is unwarranted but does not oppose one. (Opp'n at 14.)

Before the court can determine whether a stay is appropriate, it needs more information regarding the state-court proceedings' current posture. Accordingly, the court directs Defendant to update the court, within seven days of the entry of this order, as to the status of the pending

state-court proceedings and whether she still desires a stay. The court also directs Plaintiff to respond to Defendant's submission within seven days of its filing.

## III. CONCLUSION

For the foregoing reasons, Defendant's (Dkt. 54) motion to dismiss is DENIED. Defendant is DIRECTED, within seven days of the entry of this order, to inform the court in writing as to (1) the status of the pending state-court proceedings regarding the distribution of High Farms membership interests and (2) whether she continues to want this court to stay this case. Plaintiff is DIRECTED to respond to Defendant's submission within seven days of its filing.

SO ORDERED.

Dated: Brooklyn, New York
      March 13, 2019

s/NGG, USDJ
NICHOLAS G. GARAUFIS
United States District Judge