UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
HIGH FARMS LLC,

                 Plaintiff,                         Case No. 16-cv-00736 (NGG)(PK)

     v.

GWENDOLYN KING,                       SERVED: MARCH 5, 2020

                 Defendant.
-----------------------------------------------------------x

## PLAINTIFF'S   MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION FOR PARTIAL SUMMARY JUDGMENT

Of Counsel:

     Hillary A. Frommer

                                  **FARRELL FRITZ, P.C.**

                                    400 RXR Plaza, 3rd Floor
                                    Uniondale, NY 11556
                                    (516) 227-0700
                                    *Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 3

    A. Background ........................................................................................................ 3

    B. Defendant Deposits Checks Drawn on High Farms' Account ....................... 4

    C. Procedural History ........................................................................................... 5

ARGUMENT ..................................................................................................................... 6

    I.    SUMMARY JUDGMENT STANDARD .................................................. 6

    II.    NEW YORK LAW APPLIES TO PLAINTIFF'S CLAIMS ....................... 8

    III.    THE APPLICATION OF NEW YORK LAW WARRANTS GRANTING
        SUMMARY JUDGMENT ON THE SECOND CAUSE OF ACTION ....... 9

        A. The High Farms Checks are a Loan Under New York Law ................... 9

        B. Defendant Cannot Offer Any Evidence to Refute this *Prima Facie*
           Fact Because her Sole "Evidence is Inadmissible Under New York's
           "Dead Man's Statute" ........................................................................... 10

CONCLUSION ................................................................................................................ 14

i

## TABLE OF AUTHORITIES

Page(s)

Cases

*Amnesty Am. v. Town of West Hartford,*
 361 F.3d 113 (2d Cir. 2004)........................................................................................6

*Anderson v. Liberty Lobby, Inc.,*
 477 U.S. 242 (1986)....................................................................................................6

*Athineos v Andromeda Invs. Co.,*
 No. 13 Civ. 5076 (CM) 2015 U.S. Dist. LEXIS 145638 (S.D.N.Y. Oct. 23,
 2015) .....................................................................................................................7, 14

*Bernazard v. Koch,*
 15-CV-642(PKC)(LB), 2018 U.S. Dist. LEXIS 38575 (E.D.N.Y. Mar. 8,
 2018) ...........................................................................................................................7

*Carey v. Crescenzi,*
 923 F.2d 18 (2d Cir. 1991)..........................................................................................7

*CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP,*
 735 F.3d 114 (2d Cir. 2013).........................................................................................7

*Clark v. Meyer,*
 188 F.Supp.2d 416 (S.D.N.Y. 2002)..............................................................11, 12, 13

*Duncan v. Clarke,*
 388 N.Y. 282 (1955) ..................................................................................................13

*Erie R.R. v. Tompkins,*
 304 U.S. 64, 58 S.Ct. 817 (1988)................................................................................8

*Fireman's Fund Ins. Co. v. Wilner,*
 No. 10-CV-597 (CBA)(JMA), 2012 U.S. Dist. LEXIS 24334 (E.D.N.Y. Feb.
 27, 2012) ...............................................................................................................11, 12

*Globecon Group, LLC v. Hartford Fire Ins. Co.,*
 434 F.3d 165 (2d Cir. 2006).........................................................................................6

*Hamilton v. Accu-Tek,*
 935 F.Supp. 1307 (E.D.N.Y. 1996) .............................................................................8

*Herrmann v. Sklover Group, Inc.,*
 2 A.D.3d 307 (1st Dept. 2003)...................................................................................12

ii

*Huminski v. Corsones*,
   396 F.3d 53 (2d Cir. 2005) ............................................................................................ 6

*Intercontinental Planning, Ltd. v. Daystrom, Inc.*,
   24 N.Y.2d 372 (1969) .................................................................................................... 8

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*,
   424 F.3d 195 (2d Cir. 2005) .......................................................................................... 7

*Lewin v. Richard Avedon Found.*,
   11-CV-8786 (KMW) (FM), 2016 U.S. Dist. LEXIS 39433 (S.D.N.Y. Mar. 25,
   2016) ............................................................................................................................. 11

*Mark Patterson, Inc. v. Bowie, ex rel. Certain Underwriters at Lloyd's London*,
   172 Misc.2d 1000 (Sup. Ct, New York 1997) ....................................................... 12, 13

*Marks v. Scalabrini*,
   204 F.Supp.3d 514 (S.D.N.Y. 2016) ........................................................................ 7, 11

*In re McNally's Estate*,
   54 A.D.2d 1103 (4th Dept. 1976) .................................................................................. 9

*NAACP v. AcuSport, Inc.*,
   271 F.Supp.2d 435 (E.D.N.Y. 2003) ............................................................................. 8

*Nay v. Curley*,
   113 N.Y. 575 (1889) ....................................................................................................... 9

*Pacific Mgmt. Corp. v. Toumaniantz*,
   14 A.D. 864 (1st Dept. 1961) ................................................................................... 9, 10

*Pro Bono Invs., Inc. v. Gerry*,
   No. 03 Civ. 4347 (JGK), 2005 U.S. Dist. LEXIS 22240 (S.D.N.Y. Sept. 20,
   2005) ................................................................................................................... 11, 12, 13

*R.G. Group, Inc. v. Horn & Hardart Co.*,
   751 F.2d 69 (2d Cir. 1984) ............................................................................................. 7

*Raskin v. Wyatt Co.*,
   125 F.3d 55 (2d Cir. 1997) ............................................................................................. 7

*Rosenfeld v Basquiat*,
   78 F.3d 84 (2d Cir. 1996) ............................................................................................. 11

*Softel, Inc. v Dragon Medical & Scientific Communications, Inc.*,
   118 F.3d 955 (2d Cir. 1997) ........................................................................................... 8

iii

*Tufariello v. Long Island R.R.*,
   364 F. Supp. 2d 252 (E.D.N.Y. 2005) ............................................................................7

*United States v. McCombs*,
   30 F.3d 310 (2d Cir. 1994) .............................................................................................10

*William J. Conlon & Sons, Inc. v Wanamaker*,
   583 F.Supp 212 (E.D.N.Y. 1984) ..................................................................................8

*Zukerman v. Metropolitan Museum of Art*,
   307 F.Supp.3d 304 (S.D.N.Y. 2018) ..............................................................................8

**Statutes**

CPLR 4519 .................................................................................................................................11

Fed. R. Civ. P. 56(c) ...................................................................................................................6

Fed. R. Civ. P. 56(e) ...........................................................................................................7, 12

Fed. R. Evid. 601 .......................................................................................................................11

Plaintiff High Farms LLC ("High Farms") respectfully submits this Memorandum of Law in Support of its Motion for Partial Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and Local Rule 56.1(a) of the U.S. District Court Rules for the Eastern and Southern Districts of New York. Plaintiff seeks an Order awarding it damages in the amount of $285,000 plus interest from February 24, 2015.

## PRELIMINARY STATEMENT

High Farms brought this action to recover $285,000 it loaned to Defendant Gwendolyn King in January 2014. Those funds are for the benefit of, and will ultimately be distributed to, all of High Farms' members including the Estate of John D. Higgins, which holds a 25.5% membership interest in High Farms.

The undisputed facts of this action are simple and straightforward. Defendant deposited two checks, with check numbers 1013 and 1015, drawn on High Farms' Scottrade bank account totaling $285,000 (hereinafter the "High Farms Checks"). Those checks were signed by John D. Higgins ("John") who, in January 2014, was the managing member of High Farms. Defendant endorsed the backs of the High Farms Checks, deposited them into her personal bank account on January 13, 2014, and used those funds to purchase a home in St. Petersburg, Florida. As of the time of the aforementioned deposit, Defendant had never loaned any money to High Farms or to any third party on its behalf.

In February 2015, Defendant sold her home in Suffolk County, New York. As a result of that sale, Defendant received more than $221,000 which she deposited into her personal bank account. Despite having the funds to do so, Defendant has never repaid the $285,000, or any portion thereof, to High Farms.

1

As a matter of New York law, the $285,000 deposited into Defendant's account was a loan from High Farms. As Defendant admits that she has never repaid those funds, High Farms is entitled to a judgment awarding it damages in the amount of $285,000 plus interest. That interest should run from February 24, 2015, which is the date Defendant closed on the sale of her New York home and acquired sufficient funds to repay at least a portion of that loan.

Summary judgment is warranted because Defendant cannot put forth any admissible evidence showing that the High Farms Checks were anything other than a loan from High Farms. Defendant admits that the only "evidence" she has regarding the nature and purpose of the High Farms Checks is a single conversation she allegedly had with John on January 13, 2014. She has no documentation regarding that transaction other than the High Farms Checks themselves and her bank statement showing the deposit of the funds into her account.  However, her conversation with John is inadmissible pursuant to New York's "Dead Man's Statute" which this Court must apply on this motion and at trial.  Therefore, Defendant has no admissible evidence to create any genuine issue of material fact.

The Court should grant High Farms' motion for partial summary judgment, determine that Defendant is liable to High Farms, and award High Farms damages in the amount of $285,000 plus interest.

## STATEMENT OF FACTS

### A.   Background

High Farms is a New York Limited Liability Corporation with its principal place of business located at 105 High Farms Road, Glen Head, New York (Ex. 1, ¶ 2; Ex. A).[1]  It was formed in December 2012 under Section 203 of the New York Limited Liability Company Law (Ex. A). Pursuant to its Articles of Organization, High Farms is managed by its members (*id*). In January 2014, John was a member of High Farms, and was acting as its sole manager with the express knowledge of all of its other members (Ex. 1, ¶¶ 13, 22).

In 1957, John married Madeline Higgins, and they remained married until John's death on November 5, 2016. Madeline died on August 23, 2018 (Ex. 2, p. 26; Higgins Decl. ¶ 3).  At the time of his death, John had a 25.5% membership interest in High Farms (Ex. 1, ¶ 13). That membership interest is currently owned by John's Estate, which is being administered in the Nassau County Surrogate's Court (Ex. 1, ¶ 13 Ex. 9; Higgins Decl. ¶ 2). When the Amended Complaint was filed, it was believed that the three other members of High Farms are the JDH 212 Irrevocable Family Trust (also known as the JDH 2012 Irrevocable Trust) , the Madeline Higgins Irrevocable Family Trust, and the John D. Higgins Revocable Trust (Ex. 1, ¶ 7). Defendant has never been a member of High Farms (Ex. 2, p. 32).

Defendant is John's sister-in-law. In January 2014, she lived at 110 Boney Lane, Nissequogue, New York, which is in Suffolk County (Ex. 4, pp. 15-16, 26).

---

[1] Exhibits 1 through 10 referenced herein are annexed to the accompanying Declaration of Hillary A. Frommer dated March 5, 2020. Exhibits A and B, are annexed to the accompanying Declaration of Laurence Higgins dated March 3, 2020; and and Exhibit C is annexed to the accompanying Declaration of Ania Kowalik dated February 26, 2020.

**B.**   <u>Defendant Deposits Checks Drawn on High Farms' Account</u>

High Farms maintained an account with Scottrade with account number 38931500 (Higgins Decl. ¶ 7; Ex. B). Defendant endorsed two checks, with check numbers 1013 and 1015, totaling $285,000 that were drawn on High Farms' Scottrade account and made payable her (*i.e.* the High Farms Checks) and deposited them into her personal account at TD Bank on January 13, 2014 ( (Ex. C; Ex. 2, pp. 201-202; Ex. 3). The High Farms Checks were signed by John, who was the managing member of High Farms at that time (Kowalik Decl. ¶ 7; Ex. C; Ex. 1, ¶ 22).

As of January 13, 2014, Defendant had not loaned any money to High Farms. This is established by Defendant's testimony that she had never heard of High Farms until this lawsuit began in February 2016, and she "didn't do loans" (Ex. 2, pp. 28, 30, 32, 126). This is further evidenced by the statements for High Farms' Scottrade account for December 2012 through January 2014, which show that High Farms did not receive any cash in the amount of $285,000 (Ex. B).

Defendant admits that her only evidence regarding the nature or purpose of the High Farms Checks is a single conversation she claims to have had alone with John on January 13, 2014. She has no documents other than the High Farms Checks themselves and her bank statement showing her deposit of the funds (*see* Ex. 2, pp. 200-201, 285, 355; Ex. 4; Ex. 5).

Before Defendant deposited the High Farms Checks, the balance in her personal TD Bank account was $814.59 (Ex. 3). In January 2014, Defendant purchased a house located at 557 Boca Ciega Point Boulevard North, St. Petersburg, Florida for a purchase price of $285,000 (Ex. 6). On January 27, 2014, $280,000.62 was sent from Defendant's TD Bank account by wire

transfer in connection with Defendant's purchase of that St. Petersburg, Florida property (Ex. 2 p. 24; Ex. 6; Ex. 7).

In February 2015, Defendant sold her house in Nissequogue, New York and deposited $221,517.39 she received from that sale into her personal TD Bank account (Ex. 2, p. 188; Ex. 8). As of the February 24, 2015 closing date, Defendant had sufficient funds to repay at least a portion of the loan. To date, Defendant has not repaid the $285,000, or any portion thereof, to High Farms (Ex. 2, p. 374; Ex. 3).

### C.  Procedural History

High Farms commenced this action by filing a Complaint on February 11, 2016, (Docket No. 1).[2] A summons issued on February 12, 2016, and Defendant was served on March 4, 2016 (Docket Nos. 4 and 5). Following substitutions of counsel and a brief stay of the action, High Farms filed an Amended Complaint on May 15, 2018 (Ex. 1). As alleged in the Amended Complaint, this Court's jurisdiction is based on diversity-of-citizenship. High Farms is a New York limited liability company whose members are citizens of New York, Connecticut, and Massachusetts; and Defendant is a citizen of Florida (Ex. 1, ¶¶ 10-12). The Amended Complaint asserts four state law causes of action against Defendant: (1) breach of contract; (2) repayment of a loan; (3) unjust enrichment; and (4) the imposition of a constructive trust (*id.* ¶¶ 40-59).

Defendant moved to dismiss the Amended Complaint. The Court denied that motion in a Memorandum and Order dated March 13, 2019 (Docket No. 60).

Thereafter, the Court granted Defendant's then counsel leave to withdraw, ordered Defendant, who was appearing *pro se*, to file an Answer to the Amended Complaint by July 5, 2019, and set a discovery schedule (Docket Minute Entries dated March 19, 2019 and June 6,

---

[2] Plaintiff respectfully refers the Court to the LIVE ECF Database for the Court filings in this matter.

2019; Docket No. 66).  Defendant did not file an Answer to the Amended Complaint in compliance with the Court's Order (Docket Sheet; Frommer Decl. ¶ 4).

High Farms conducted document discovery, served Defendant with interrogatories and a notice to admit, and took Defendant's deposition. Defendant chose not to conduct any discovery whatsoever. She did not serve High Farms with any document requests or interrogatories, and did not conduct a single deposition (Frommer Decl. ¶ 5).  Discovery was completed in November 2019, and High Farms requested a pre-motion conference in anticipation of moving for partial summary judgment on the Second Cause of Action of the Amended Complaint. (Docket No. 76). The Court held a pre-motion conference on January 23, 2020, and permitted High Farms to move for partial summary judgment (Ex. 10).

## ARGUMENT

### I.     SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court must grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.,* 434 F.3d 165, 170 (2d Cir. 2006).  The moving party bears the burden of showing that he or she is entitled to summary judgment.  *See Huminski v. Corsones,* 396 F.3d 53, 69 (2d Cir. 2005).  The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford,* 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Once the moving party has met its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013); Fed. R. Civ. P. 56(e). The Second Circuit has held that "[t]he principles governing admissibility of evidence do not change on a motion for summary judgment…. Therefore, only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment. *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997); *see also LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005) ("the evidence on summary judgment must generally be admissible evidence").

Furthermore, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars," supported by admissible evidence, showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted); *Tufariello v. Long Island R.R.*, 364 F. Supp. 2d 252, 256 (E.D.N.Y. 2005); *see also Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991) (holding that a plaintiff's bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment).

A *pro se* litigant is not relieved of the formalities of summary judgment, and cannot rely on inadmissible evidence or unsupported, conclusory assertions to defeat such a motion. *Bernazard v. Koch*, 15-CV-642(PKC)(LB), 2018 U.S. Dist. LEXIS 38575, at *5 (E.D.N.Y. Mar. 8, 2018); *Marks v. Scalabrini*, 204 F.Supp.3d 514, 521 (S.D.N.Y. 2016).  Thus, summary judgment should be granted where the nonmovant, including a *pro se* litigant, fails to present any admissible evidence that creates an issue of fact. *See Athineos v Andromeda Invs. Co.*, No. 13 Civ. 5076 (CM) 2015 U.S. Dist. LEXIS 145638 (S.D.N.Y. Oct. 23, 2015) (granting the

7

defendants' motion for summary judgment where the only evidence the plaintiffs offered in opposition was inadmissible).

## II.   NEW YORK LAW APPLIES TO PLAINTIFF'S CLAIMS

New York substantive law applies to this action.  Under the well settled Erie Doctrine, "[f]ederal courts sitting in diversity must apply the substantive law of the forum state on outcome-determinative issues including the forum state's approach to choice of law problems," but continue to apply federal procedural law. *Hamilton v. Accu-Tek*, 935 F.Supp. 1307, 1325 (E.D.N.Y. 1996), *citing Erie R.R. v. Tompkins*, 304 U.S. 64, 80, 58 S.Ct. 817, 832 (1988); *NAACP v. AcuSport, Inc.*, 271 F.Supp.2d 435, 477 (E.D.N.Y. 2003).

A federal court will engage in a choice-of-law analysis only where there appears to be an actual conflict of laws. *Zukerman v. Metropolitan Museum of Art*, 307 F.Supp.3d 304, 316 (S.D.N.Y. 2018).   While a choice-of-law analysis is not necessary in this case, if this Court does engage in such inquiry, it must apply New York's choice-of-law principles to determine which state substantive law applies to the merits of this action. *Softel, Inc. v Dragon Medical & Scientific Communications, Inc.*, 118 F.3d 955 (2d Cir. 1997).

The New York Court of Appeals has adopted an "interest analysis" choice-of-law approach, "which gives to the place 'having the most interest in the problem' paramount control over the legal issues arising out of a particular factual context, thus allowing the forum to apply the policy of the jurisdiction 'most intimately concerned with the outcome of the particular litigation.'" *Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 382 (1969) (internal citations omitted); *see also William J. Conlon & Sons, Inc. v Wanamaker*, 583 F.Supp 212 (E.D.N.Y. 1984) *citing Daystrom*.

New York State certainly has the most interest in this action. Indeed, it is the only state with such an interest. High Farms is a New York limited liability corporation with its principal place of business in New York (Ex. A). High Farms maintained a brokerage account with Scottrade and conducted business through Scottrade's branch in Garden City, New York (Higgins Decl. ¶¶ 8-9; Ex. B). Defendant was a New York resident at the time she deposited the High Farms Checks in January 2014; and she deposited them into a bank account located in New York (Ex. 2, pp. 15-16; Ex. 3). In January 2014, and at the time of his death, John, High Farms' managing member, lived in Glen Head New York, and held a 25.5% membership interest in High Farms (Ex. 1, ¶ 13; Ex. B; Ex. 9). That interest is currently held by John's Estate which is being administered in the Nassau County Surrogate's New York (Ex. 1, ¶ 13; Ex. 9; Higgins Decl. ¶ 2).

## III.   THE APPLICATION OF NEW YORK LAW WARRANTS GRANTING SUMMARY JUDGMENT ON THE SECOND CAUSE OF ACTION

The Second Cause of Action of the Amended Complaint alleges that the High Farms Checks which Defendant endorsed and deposited into her personal bank account constituted a loan which Defendant must repay to High Farms (Ex. 1, ¶¶ 46-48).

### A.   The High Farms Checks are a Loan Under New York Law

New York law is clear that "a presumption arises from the delivery of a check that it was delivered in payment of an antecedent debt. Evidence of delivery of a check, plus proof that there was no existing debt, however, establishes *prima facie* a loan of money." *In re McNally's Estate*, 54 A.D.2d 1103, 1104 (4th Dept. 1976); *see also Nay v. Curley*, 113 N.Y. 575, 577 (1889) (evidence that the plaintiff delivered a check to the defendant and that the plaintiff did not owe the defendant any money "repelled the presumption which would otherwise would have arisen,

*Corp. v. Toumaniantz*, 14 A.D. 864 (1st Dept. 1961) ("[t]he payment by Pacific Management

Corp. of $2,000 to defendant by check on July 2, 1956 is admitted by defendant; and in the light

of the undisputed proof that there was then no existing debt owing by plaintiff to defendant, there

is a prima facie showing that the check was for a loan of money").

As the Court must apply New York substantive law, it must apply this presumption.

*United States v. McCombs*, 30 F.3d 310, 323-324 (2d Cir. 1994) ("Presumptions and other

matters related to the burden of proof are considered matters of substantive law, governed by the

law of the jurisdiction whose substantive law applies to the merits of the question in issue").

Here, it is undisputed that Defendant's signature appears on the backs of the High Farms

Checks, and she deposited them into her personal TD Bank account (*see* Ex. 2, pp. 201-202; Ex.

C). It is further undisputed that as of January 13, 2014, Defendant was not owed any money from

High Farms. This is confirmed not only by Defendant's admissions that she "didn't do loans,"

and had never even heard of High Farms until this lawsuit began in 2016, but also by High

Farms' bank statements for the relevant period showing that it did not receive $285,000 in cash

(Ex. 2, pp. 28, 30, 32, 126; Ex. B). Therefore, High Farms has established *prima facie* that the

High Farms Checks were a loan to Defendant.

> **B.      Defendant Cannot Offer Any Evidence to Refute this**
> ***Prima Facie* Fact Because her Sole "Evidence" is**
> **Inadmissible Under New York's "Dead Man's Statute"**

Defendant has no documents showing that the $285,000 she deposited into her account

was anything other than a loan. She admits that the only "evidence" she has to refute that the

High Farms Checks were a loan from High Farms is an alleged conversation she allegedly had

alone with John on January 13, 2014 (Ex. 2, pp. 200, 285, 355; Ex. 4).  John died on November

5, 2016 (Ex. 9; Higgins Decl. ¶ 3). That purported conversation is therefore inadmissible under New York's "Dead Man's Statute."

"Because state law supplies the rules in diversity-of-citizenship, New York law, including its statute barring the testimony of certain interested witnesses must be given effect." *Rosenfeld v Basquiat*, 78 F.3d 84, 88 (2d Cir. 1996); *see also Lewin v. Richard Avedon Found.*, 11-CV-8786 (KMW) (FM), 2016 U.S. Dist. LEXIS 39433 (S.D.N.Y. Mar. 25, 2016); Fed. R. Evid. 601 ("in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision"). Codified at CPLR 4519, New York's Dead Man's Statute provides in relevant part that "a person interested in the event… shall not be examined as a witness in his own behalf or interest, or in behalf of the party succeeding to his title or interest against the executor, administrator or survivor of a deceased person… concerning a personal transaction between the witness and the deceased person" unless the executor has waived the bar of the statute. CPLR 4519; *see also Rosenfeld*, 78 F.3d at 88; *Marks v. Scalabrini*, 204 F.Supp.3d 514, 526 (S.D.N.Y. 2016).  In other words, unless the executor has waived the bar of the statute, the testimony of a person interested in the transaction concerning his or her communications with the decedent regarding the transaction at issue is inadmissible. *Pro Bono Invs., Inc. v. Gerry*, No. 03 Civ. 4347 (JGK), 2005 U.S. Dist. LEXIS 22240, at *19 (S.D.N.Y. Sept. 20, 2005); *Clark v. Meyer*, 188 F.Supp.2d 416 (S.D.N.Y. 2002).

The Dead Man's Statute bars testimony that would "affect the estate or survivor of the decedent, or a person deriving his title in interest from the decedent." *Fireman's Fund Ins. Co. v. Wilner*, No. 10-CV-597 (CBA)(JMA), 2012 U.S. Dist. LEXIS 24334, at *15 (E.D.N.Y. Feb. 27, 2012) (holding that the Dead Man's Statute did not apply because the testimony would not adversely affect the estate of the decedent).  Importantly, the Dead Man's Statute bars testimony

offered by an interested person against a corporation if the decedent had an ownership interest in the corporation at the time of his death. *See Fireman's Fund Ins. Co.*, *supra*; *Herrmann v. Sklover Group, Inc.*, 2 A.D.3d 307 (1st Dept. 2003); *Mark Patterson, Inc. v. Bowie, ex rel. Certain Underwriters at Lloyd's London*, 172 Misc.2d 1000, 1003 (Sup. Ct, New York 1997). *Herrmann*, is highly instructive in this regard. In that case, the Appellate Division held that the corporation was entitled to invoke the Dead Man's Statute and preclude the plaintiff from testifying as to conversations with its deceased officer because that officer had owned shares in the corporation which were then owned by his estate. The court further found that the defendants did not waive the bar by introducing portions of the decedent's deposition testimony into evidence because that testimony was not related to the topic on which the plaintiff sought to testify. 2 A.D.3d at 307.

Similarly, in *Mark Patterson*, the court held that the Dead Man's Statute precluded the plaintiff from offering testimony as to his conversations with the decedent who was the president and 50% owner of defendant R.M. Stephens, Inc., and whose estate, upon the decedent's death, owned that 50% interest, because "a monetary verdict against RM would be tantamount to diverting assets from [the decedent's] estate." 172 Misc.2d at 1003. The fact that the company was the named defendant, rather than the decedent's estate was irrelevant and did not render the Dead Man's Statute inapplicable. *Id.*

In the federal courts, the Dead Man's Statute applies to motions for summary judgment as well as at trial. In both *Clark v. Meyer*, and *Pro Bono Invs. v. Gerry, supra*, the courts specifically found that because Rule 56(e) mandates that evidence both in support of and in opposition to a motion for summary judgment must be admissible if offered at trial, "the federal rule requires exclusion of evidence on summary judgment motions which the dead man's statute

would exclude at trial." *Clark*, 188 F.Supp.2d at 420-421; *Pro Bono Invs.*, 2005 U.S. Dist. LEXIS 22240, at *19. Therefore, if Defendant's testimony is inadmissible at trial, it is equally inadmissible to oppose summary judgment.

The Dead Man's Statute applies in this action, and bars Defendant from offering any testimony in opposition to this motion as to her alleged conversation with John regarding the High Farms Checks. First, there can be no dispute that for purposes of the Dead Man's Statute, Defendant is an interested person. She deposited checks drawn on High Farms' Scottrade account totaling $285,000 into her personal bank account, and "stands to gain or lose personally and directly from the determination of" whether those funds were a loan which she must repay. *Pro Bono Invs.*, 2005 U.S. Dist. LEXIS 22240, at *20, *citing Duncan v. Clarke*, 308 N.Y. 282 (1955).

Second, John's Estate is adversely affected by any testimony that Defendant would try and offer to refute that the High Farms Checks were a loan.  At the time of his death, John held a 25.5% membership interest in High Farms (Ex. 1, ¶ 13). That interest is currently held by John's Estate (Higgins Decl. ¶ 2), which, like the other three members of High Farms, will directly benefit from High Farms' success in recovering damages from Defendant. In fact, if High Farms is successful in this action, John's Estate, is poised to recover $72,675 (which represents 25.5% of the loan amount owed to High Farms) excluding any interest. The converse is also true. John's Estate will be adversely impacted by a finding in Defendant's favor. As was the case in *Mark Patterson, Inc.*, a judgment against High Farms would be "tantamount to diverting assets" from John's Estate.

Finally, High Farms has not waived the bar of the Dead Man's Statute (Ex. 10).

Since Defendant's only evidence in opposition to the instant motion is inadmissible, she cannot sustain her burden to defeat summary judgment. *Athineos v Andromeda Invs. Co.*, No. 13 Civ. 5076 (CM) 2015 U.S. Dist. LEXIS 145638, at *18-19 (S.D.N.Y. Oct. 23, 2015) (granting the defendants' motion for summary judgment where the only evidence the plaintiffs offered in opposition was barred by the Dead Man's Statute). The Court should therefore grant summary judgment on the Second Cause of Action, find that Defendant received and must repay a loan from High Farms in the amount of $285,000 on January 13, 2014, and award High Farms damages in the amount of $285,000 plus interest running from February 25, 2015.

## CONCLUSION

Based on the foregoing, Plaintiff High Farms LLC respectfully requests that the Court grant partial summary judgment on the Second Cause of Action of the Amended Complaint, and award High Farms $285,000 plus interest running from February 25, 2015 against Defendant Gwendolyn King.

Dated: Uniondale, New York
March 5, 2020

Respectfully submitted,

/s/ Hillary A. Frommer
Hillary A. Frommer
Farrell Fritz, P.C.
400 RXR Plaza, 3rd Floor
Uniondale, New York 11556
(516) 227-0700
*Attorneys for Plaintiff*

14

UNITED STATES DISTRICT COURT                    Case No. 16-cv-00736 (NGG)(PK)
EASTERN DISTRICT OF NEW YORK

HIGH FARMS LLC,

        Plaintiff,

    v.

GWENDOLYN KING,

        Defendant.

---

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

---

**FARRELL FRITZ, P.C.**
*Attorneys for Plaintiff*
400 RXR Plaza
Uniondale, NY 11556
(516) 227-0700

---

*This certification, pursuant to 22 N.Y.C.R.R. Part 130-1.1-a,*
*applies to the following papers contained within this back:*

> *Plaintiff's Memorandum of Law in Support of its*
> *Motion for Partial Summary Judgment*

Dated: March 5, 2020

Signature: _____*s/Hillary A. Frommer*_____
                     Hillary A. Frommer