SUPREME COURT – STATE OF NEW YORK

Present:

**HON. VITO M. DESTEFANO,**
                    Justice         TRIAL/IAS, PART 7
                                                     NASSAU COUNTY

**LAURENCE HIGGINS, as Preliminary Executor
of the ESTATE OF JOHN D. HIGGINS, and
LAURENCE HIGGINS as Trustee of the MADELINE
HIGGINS IRREVOCABLE TRUST,**

                                                               **Decision and Order**

        Petitioner,

**For the Dissolution of, and Appointment of a Receiver
or Liquidating Trustee for, HIGH FARMS LLC,
Pursuant to Sections 702 and 703 of the Limited
Liability Company Law,**

                    -against-                           MOTION SEQUENCE:01
                                                               INDEX NO.: 613132/2019

**GWENDA HIGGINS, as Co-Trustee of the JDH
2012 IRREVOCABLE TRUST, and RICHARD J.
MARGENOT, as Temporary Administrator of the
ESTATE OF MADELINE HIGGINS,**

        Respondents,

**HIGH FARMS, LLC,**

        Nominal Defendant.

**The following papers and the attachments and exhibits thereto have been read on this motion:**

| | |
|---|---|
| Notice of Petition | 1 |
| Memorandum of Law in Support | 2 |
| Answer with Counter Claims | 3 |
| Answer with Counter Claims | 4 |
| Reply to Counter Claims | 5 |
| Reply to Counter Claims | 6 |

In a proceeding for judicial dissolution of High Farms LLC, Petitioner seeks an order pursuant to: Limited Liability Company Law 702 dissolving High Farms LLC; and Limited Liability Company Law 703 appointing a receiver or liquidating trustee upon dissolution.

## Background

High Farms LLC (the "Company" or "High Farms") was formed in 2012 as a vehicle to invest millions of dollars of the joint marital assets of husband and wife Madeline and John Higgins. Although Articles of Organization were filed in December 2012, an operating agreement was never executed.

The assets of the Company consist primarily of a brokerage account at Scottrade containing approximately $18 million in securities.[1]

The initial sole member of High Farms was the Higgins Asset Management Trust ("Management Trust"), of which John and Madeline were co-trustees, sole members, and equal owners.

On December 22, 2012, the Management Trust assigned a 24.5% member interest in High Farms to the JDH 2012 Irrevocable Trust ("JDH 2012 Trust").

On December 27, 2012, the Management Trust assigned another 24.5% member interest in High Farms to the Madeline Higgins Irrevocable Trust ("Madeline Trust").

The Management Trust was revoked in 2015 and, upon revocation, 25.5% of the Management Trust became owned by John. Ownership of the remaining 25.5% share once held by Madeline is in dispute.[2]

There is also a dispute as to the rightful trustee of the JDH 2012 Trust. While daughter Gwenda claims to be the sole trustee of the 2012 JDH Trust, son Laurence claims to be a co-trustee with Gwenda.[3]

In 2014, Madeline filed for divorce.

---

[1] Scottrade is now TD Ameritrade.

[2] Respondent Gwenda Higgins maintains that upon revocation of the Management Trust, a 25.5% membership interest went to John and the remaining 25.5% membership interest went to Madeline and that "Petitioner has wrongfully attempted to convert this interest from Madeline's Estate to John's Estate" (Answer at 20, 76). Specifically, according to Respondent, in August 2015, John and Laurence "surreptitiously executed" an Assignment and Transfer Agreement purporting to transfer the Madeline Trust's 24.5% interest in High Farms to the 2015 John D. Higgins Irrevocable Trust ("2015 JDH Trust"), "in violation of the terms of the Madeline Trust and the automatic stays in the divorce action then pending between Madeline and John" (Answer at 77). Notwithstanding, "neither John nor Laurence have ever produced a document purporting to show the transfer of Madeline's interest in High Farms to the JDH 2015 Trust" (Answer at 85). In reply to the counterclaims (see infra), Petitioner "admit[s] that no transfer of an interest in the Company was made to the JDH 2015 Trust" (Reply at 85).

[3] John and Madeline had a third child, John, who does not seem to be involved with the litigation.

In August 2015, Scottrade "placed" the High Farms brokerage account in a "restricted status, such that the Company was not permitted to open new positions, transfer funds, or withdraw funds from the Brokerage Account" (Petition at 6).[4]

John died in November 2016, while the divorce proceeding was pending, and, thus, no judgment of divorce was ever issued.

In August 2017, Madeline commenced an action alleging wrongful acts by John prior to his death with respect to High Farms and which were aided and abetted by their son Laurence.[5]

Madeline died in August 2018.

*Petition for Dissolution*

In September 2019, Petitioner Laurence Higgins, as Preliminary Executor of the Estate of John D. Higgins, and Laurence Higgins, as Trustee of the Madeline Higgins Irrevocable Trust, commenced the instant proceeding seeking dissolution of High Farms and, upon such dissolution, the appointment of a receiver or liquidating trustee.

According to the verified petition, the Estate of Madeline and Estate of John have Federal and State income and estate tax liabilities (including interest and penalties) that are primarily attributable to the brokerage account and the parties have been unable to agree to a partial distribution from the brokerage account that would allow them to satisfy these liabilities and stop the accrual of interest and penalties (Petition at 39-42).

In addition, High Farms has liability with a margin loan in the amount of $3,694,951.44, which is not being serviced and continues to accrue interest and the parties are unable to agree to a partial liquidation of the brokerage account that would allow the margin loan to be satisfied (Petition at 43-45).

Given the "animosity", "distrust" and "bitter dissension" that exists among the owners and purported owners of the membership interests in High Farms, there is an inability to manage the brokerage account and the affairs of High Farms; there are outstanding tax liabilities and a margin loan not being addressed; and High Farms is unable to function under its divided ownership.

Accordingly, Petitioner seeks dissolution of High Farms because it is not reasonably practicable to carry on the business in conformity with the articles of organization; continuing

---

[4] According to Gwenda, the "freeze out" was the result of complaints made to Scottrade and the Financial Industry Regulatory Authority (FINRA) regarding the "improper" and "unilateral" distributions made by John and a dispute between the members of High Farms as to which members were authorized to access the brokerage account. Allegedly, John had falsely represented to Scottrade that he alone was authorized to access the brokerage account (Answer at 36).

[5] That action is *Gwenda Marie Higgins, as Executor of the Estate of Madeline Higgins, individually and derivatively on behalf of High Farms, LLC v Laurence Higgins, individually and Laurence Higgins, as Preliminary Executor of the Estate of John D. Higgins* (Index No. 602164/2017) (the "related action").

the company is financially unfeasible; and the parties are unable to promote or achieve its purpose, to wit, to prudently manage and invest the assets of the brokerage account.

*Answer to the Petition*

Respondent Gwenda answered the petition agreeing that it is no longer practicable for High Farms to carry out its intended purpose of operating and managing the brokerage account and other investments and "does not object to the dissolution of High Farms, nor the appointment of a receiver or liquidating trustee." Nevertheless, Gwenda objects to the liquidation or distribution of the brokerage account until the claims made against Petitioner Laurence and John in the related action are determined[6]; the "Reimbursement Claims" are determined (in the Surrogate's Court, Gwenda seeks reimbursement from High Farms for expenses forwarded on behalf of Madeline)[7]; and the counterclaims in this dissolution proceeding are determined (Answer at 9, 12, 54).

With respect to the tax liabilities and margin loan, Gwenda "affirmatively states" that "partial distributions from the Brokerage Account should be made immediately for those purposes" and that while Gwenda agrees to partial distributions to satisfy the outstanding taxes and margin loan, Laurence has refused to permit the partial distribution unless it is tied to a larger agreement concerning the operation of High Farms (Answer at 12, 41). According to Gwenda, a "simple agreement for High Farms to make immediate, partial distributions to satisfy outstanding tax liabilities and the margin loan is practicable and beneficial to all parties" yet "Petitioner has unreasonably refused to consent to same" (Answer at 53).

Gwenda also asserts eight counterclaims in her answer.

In her first counterclaim, Gwenda seeks a judgment declaring that High Farms is currently owned as follows: John's Estate (25.5%), Madeline's Estate (25.5%), 2012 JDH Trust (24.5%), and 24.5% by the Madeline Trust or the 2015 JDH Irrevocable Trust, but not both (Answer at 121).

---

[6] In the related action, derivative and individual claims are asserted against John's Estate and Laurence seeking an accounting for High Farms and asserting claims for breach of fiduciary duty, conversion and unjust enrichment. Gwenda maintains that the claims made in the related action are related to and affect the claims made in this dissolution proceeding as other members of High Farms have been injured by the actions of John and Laurence and are entitled to an award of damages and/or the imposition of a surcharge stemming from such misconduct (Answer at 104).

[7] Pending before the Surrogate's Court in Nassau County are two proceedings commenced by Gwenda seeking reimbursement for expenses she personally paid that were necessary for the care of Madeline but which she alleges "should have been paid out of the 2012 JDH Trust, for which Madeline was the sole life beneficiary, or directly by John" (the "Reimbursement Proceedings"). "As the 2012 JDH Trust's sole asset is its 24.5% interest in High Farms, Gwenda must be reimbursed for such expenses before High Farms is dissolved and its assets liquidated" (Answer at 112-113).

In the second and third counterclaims, Gwenda seeks an accounting against John's Estate and Laurence, respectfully, based on their breaches of fiduciary duty, which constitute the fourth and fifth counterclaims.

Unjust enrichment is asserted against John's Estate and Laurence in the sixth counterclaim.

In the seventh counterclaim, Gwenda seeks an order directing Laurence to correct certain tax returns. Specifically, before John's death, he "caused" High Farms to file tax returns which "falsely claimed that all distributions made from High Farms were distributed equally" to all members when, "in actuality, only John received distributions from High Farms." Moreover, Laurence, as Preliminary Executor of John's Estate, filed tax returns on behalf of High Farms which "falsely claimed that John's Estate owns 51% of High Farms while Madeline's Estate has no interest in High Farms" (Answer at 152-153).

In the last counterclaim, Gwenda seeks to enjoin Laurence from "blocking" Madeline's Estate from making a timely 754 election under the Internal Revenue Code.[8] If Laurence is permitted to "block" Madeline's Estate from making the 754 election, it will cause Madeline's Estate to incur substantial capital gains taxes (Answer at 157-161).

Laurence replied to Gwenda's counterclaims with general denials and 16 affirmative defenses including the counterclaims are barred "because there are other actions pending for the same causes of action in this Court or other courts" and "because they are not properly brought in a dissolution proceeding under the Limited Liability Company Law."

Respondent Richard Margenot, as Temporary Administrator of the Estate of Madeline Higgins, separately answered the petition with general denials and a counterclaim requesting a "judgment determining that the Estate of Madeline Higgins owns at least 25.5% of the membership interests in High Farms LLC" (Margenot Answer at 3, 6).[9]

### The Court's Determination

Limited Liability Company Law ("LLCL") 702 provides for judicial dissolution as follows:

> On application by or for a member, the Supreme Court in the judicial district in which the office of the limited liability company is located may decree dissolution of a limited liability company whenever it is not reasonably practicable to carry on the business in conformity with the articles of organization or operating agreement.

---

[8] A 754 election under the Internal Revenue Code provides a step-up in basis in appreciating property that passes to a deceased member's estate upon the death of that member of the company.

[9] Petitioner replied to Margenot's counterclaim with an affirmative defense that Margenot fails to state a claim upon which relief may be granted and reserves the right to amend and/or supplement his reply with additional affirmative defenses.

Dissolution of a limited liability company pursuant to LLCL 702 requires the petitioning member to establish, in the context of the terms of the operating agreement or articles of incorporation, that the management of the entity is unable or unwilling to reasonably permit or promote the stated purpose of the entity to be realized or achieved, or continuing the entity is financially unfeasible (*Matter of 1545 Ocean Ave., LLC*, 72 AD3d 121 [2d Dept 2010]).

Under the circumstances presented, coupled with the fact that Respondent does not object to the dissolution of High Farms inasmuch as she agrees that it is no longer practicable for High Farms to carry out its intended purpose of operating and managing the brokerage account and other investments, the court concludes that it is not reasonably practicable for High farms to continue to operate, as continuing the Company is financially unfeasible (*see* LLCL 702; *Mizrahi v Cohen*, 104 AD3d 917 [2d Dept 2013]; *Matter of 1545 Ocean Ave., LLC*, 72 AD3d at 131, *supra*).

Petitioner's application for judicial dissolution of High Farms is, therefore, granted.

Petitioner's request for the appointment of a receiver or liquidating trustee is also granted inasmuch as LLCL 703 provides that, in the event of dissolution of a limited liability company, the Supreme Court may wind up the limited liability company's affairs and, in connection therewith, appoint a receiver or liquidating trustee.[10]

## Conclusion

Based on the foregoing, it is hereby

Ordered that the petition for dissolution is granted and the Petitioner shall file a certificate of dissolution with the Secretary of State following conference with the court on June 3, 2020 as indicated below; and it is further

Ordered that the branch of the application seeking the appointment of a receiver is granted, with the appointment held in abeyance pending further conference with the court, to be

---

[10] In this vein, LLCL 704 provides that, upon dissolution, the assets are to be distributed to creditors; to members or former members in satisfaction of liabilities for distributions under Sections 507 or 509; and to members first for the return of their contributions, to the extent not previously returned, and second respecting their membership interests, in the proportions in which the members share in distributions in accordance with Section 504.

held before the undersigned on June 3, 2020 at 9:30 a.m.; and it is further

Ordered that the counterclaims shall be severed.[11]

DATE: April 27, 2020

*[signature]*

Hon. Vito M. DeStefano, J.S.C.

---

[11] Pursuant to CPLR 407, in a special proceeding, the court may at any time order the severance of a particular claim and order that, as to such claim, the special proceeding continue as an action or as a separate special proceeding.