UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------- X
                                                     :
HIGH FARMS, LLC,                                     :
                                                     :
                          Plaintiff,                 :        **REPORT AND**
                                                     :        **RECOMMENDATION**
         -against-                                   :        1:16-cv-00736 (NGG)(PK)
                                                     :
GWENDOLYN KING,                                      :
                                                     :
                          Defendant.                 :
                                                     :
---------------------------------------------------- X

**Peggy Kuo, United States Magistrate Judge:**

Plaintiff High Farms, LLC ("Plaintiff" or "High Farms"), brings this action against Defendant

Gwendolyn King for breach of contract, repayment of a loan, unjust enrichment, and constructive

trust. (Am. Compl., Dkt. 50.) On April 13, 2020, Gwenda Higgins ("Gwenda" or "Proposed

Intervenor") filed a Motion to Intervene and Disqualify Counsel ("Motion," Dkt. 96) pursuant to

Federal Rule of Civil Procedure 24. (Mem. of L. in Supp. of Mot. to Intervene and to Disqualify

Counsel, "Mem. in Supp.," Dkt. 96-14.) The Honorable Nicholas G. Garaufis referred the Motion to

the undersigned on June 29, 2020. (Dkt. 113.)

For the reasons set forth below, the undersigned respectfully recommends that the Motion be

denied.

## BACKGROUND

In 2012, John Higgins ("John") and his wife Madeline Higgins ("Madeline") formed High

Farms, a New York limited liability company, to invest their marital assets maintained in a brokerage

account. (Decl. of Gwenda Higgins in Supp. of Mot. to Intervene and to Disqualify Counsel,

"Gwenda Decl.," Dkt. 96-1 ¶ 8.) Laurence Higgins ("Laurence") and Gwenda are two of John and

Madeline's children. (*Id.* ¶ 29 n.4; Mem. of L. in Opp. to Mot. for Intervention and Disqualification,

"Mem. in Opp.," Dkt. 106-19 at 2.)  It is undisputed that at one point, there were three members of High Farms: the John D. Higgins Irrevocable Trust, formed in 2012, with 24.5% interest in High Farms ("JDH 2012 Irrevocable Trust"); the Madeline Higgins Irrevocable Family Trust, with 24.5% interest; and the Higgins Asset Management Trust, with 51% interest ("HAMT").  (Mem. in Supp. at 3.)

The Amended Complaint alleges that in or around January 2014, Defendant, who was Madeline's sister, received two checks from High Farms totaling $285,000, signed by John as manager of High Farms.  (Am. Compl. ¶¶ 19, 23, 24, 26, 29.)  In November 2014, Madeline filed for divorce from John.  (Gwenda Decl. ¶ 10.)  Shortly thereafter, the HAMT was revoked.  (*Id.*)

High Farms filed this action against Defendant on February 11, 2016, seeking repayment of the $285,000, which it contends was a loan.  (Compl., Dkt. 1.)  On November 5, 2016, John died. (Am. Compl. ¶ 6.)  On May 15, 2018, High Farms filed the Amended Complaint.  (Dkt. 50.)  Madeline died in August 2018.  (Decl. of Hillary A. Frommer in Opp. to the Mot. by Non-Party Gwenda Higgins for Intervention and Disqualification, "Frommer Decl.," Dkt. 106 ¶ 11.)

As a result of the revocation of the HAMT and John and Madeline's deaths, the members of High Farms changed.  The Amended Complaint alleges that High Farms currently has four members: the JDH 2012 Irrevocable Trust (which owns 24.5% of High Farms); the Madeline Higgins Irrevocable Family Trust (24.5%); John's estate (25.5%); and the John D. Higgins Revocable Trust, which was formed in 2015 (25.5%).  (Am. Compl. ¶¶ 4, 13-16.)  In her Declaration, Gwenda states that the 25.5% of High Farms allegedly owned by the John D. Higgins Revocable Trust is actually owned by Madeline's estate.  (Gwenda Decl. ¶ 11.)

Laurence is the sole trustee of the Madeline Higgins Irrevocable Family Trust and of the John D. Higgins Revocable Trust; he is also the executor of John's estate.  (Am. Compl. ¶¶ 8, 10, 11.) Richard J. Margenot is the executor of Madeline's estate.  (Gwenda Decl. ¶ 21.)  Regarding the JDH

2012 Irrevocable Trust, Laurence maintains that he and Gwenda are co-trustees (Am. Compl. ¶ 9), but Gwenda claims that she is the sole trustee because Madeline removed Laurence as a co-trustee during her lifetime. (Reply Mem. of Law in Further Supp. of Mot. to Intervene and to Disqualify Counsel, "Reply Mem.," Dkt. 110-4 at 7 n.1.)[1] On this basis, Gwenda argues that Laurence controls only 50% of High Farms and, therefore, has no authority to bring or maintain this suit on its behalf. (*See* Gwenda Decl. ¶¶ 28, 29, 46-48.)

Defendant moved to dismiss the Amended Complaint, arguing improper service and challenging John and Laurence's authority to bring and maintain the suit. On March 14, 2019, the Court denied the motion. ("MTD Order," Dkt. 60.) The Court found, *inter alia*, that John, as an undisputed member of High Farms, acted within his authority when he hired counsel and brought this case, and that Laurence, "another High Farms member—may maintain this action so long as no other member tries to withdraw it." The Court added, "Should another High Farms member try to dismiss this suit, the court would have to decide whether that would override Laurence Higgins's desire to maintain it; that issue is not yet before the court." (MTD Order at 9.)

On November 15, 2019, Gwenda filed a letter stating that Laurence did not have the authority to prosecute this action on Plaintiff's behalf, that Laurence brought this action for an improper purpose, and to inform the Court that Plaintiff's counsel is conflicted. (Dkt. 73.) The Court issued an order on November 20, 2019, stating that Gwenda "lack[ed] capacity to be heard on the matters raised in her letter" because she was "not a party to this action and has not properly moved to

---

[1] Issues relating to High Farms are currently being litigated in the state courts of New York and Connecticut. In New York, there are three probate proceedings and two Supreme Court proceedings. (Gwenda Decl. ¶¶ 13, 15.) The probate proceedings are: (1) a proceeding concerning the validity of John's will and whether Madeline abandoned John; (2) accounting proceedings for the JDH 2012 and Madeline Higgins Irrevocable Family Trust; and (3) "a proceeding involving the validity of a substitution of assets in a separate trust agreement." (*Id.* ¶ 13.) The two New York Supreme Court actions are: (1) a derivative action alleging that John and Laurence misappropriated money from High Farms; and (2) an action seeking the dissolution of High Farms and the appointment of a receiver. (*Id.* ¶ 15.) The Connecticut action is a challenge to the validity of Madeline's will. (*Id.* ¶ 20.)

intervene." (Dkt. 75.) Gwenda was informed that if she wanted "the court to consider these issues, she [was] welcome to follow the procedure set forth in Federal Rule of Civil Procedure 24." (*Id.*)

The parties thereafter completed discovery, and, on December 10, 2019, Plaintiff moved for a premotion conference on its anticipated motion for partial summary judgment. (Dkt. 76.) The premotion conference was held on January 23, 2020 and leave was granted for the motion to proceed. (Jan. 24, 2020 Minute Entry.)

On March 26, 2020, Gwenda filed a motion for a premotion conference on her anticipated motion to intervene (Dkt. 84), which the Court denied as unnecessary, directing the parties to propose a briefing schedule for the motion. (Dkt. 86.)

Plaintiff filed its motion for summary judgment on April 1, 2020. (Dkt. 90.)

On April 13, 2020, Gwenda filed the Motion, seeking to intervene as a matter of right pursuant to Rule 24(a)(2), or, in the alternative, to intervene permissively pursuant to Rule 24(b)(1). (Mem. in Supp. at 1.) Additionally, "to the extent that she is permitted to intervene," she seeks to disqualify Plaintiff's counsel Farrell Fritz P.C. from representing Plaintiff. (*Id.* at 1, 12.)

Plaintiff filed its Memorandum of Law in Opposition on May 1, 2020 (Dkt. 106-19), and Gwenda filed her Reply Memorandum on May 14, 2020 (Dkt. 110-4).

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 24 governs motions to intervene. Rule 24(a) sets forth the requirements for intervention of right. It states, in pertinent part:

> (a) Intervention of right. On timely motion, the court must permit anyone to intervene who:
> …
>> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent the interest.

Rule 24(b) governs permissive intervention. It states, in pertinent part:

(b) Permissive intervention.
    (1) In General.  On timely motion, the court may permit anyone to intervene who:
        …
        (B) has a claim or defense that shares with the main action a common question of law or fact.
    …
    (3) Delay or prejudice.  In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

In addition, Rule 24(c) requires all motions to intervene, whether by right or permission, to "be accompanied by a pleading that sets out the claim or defense for which intervention is sought."

"In seeking intervention under this Rule, the proposed intervenor bears the burden of demonstrating that it meets the requirements for intervention."  *Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 134 (S.D.N.Y. 2016).  While the district court generally has broad discretion in considering motions to intervene, *see Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990), its discretion is particularly broad when deciding a motion for permissive intervention.  *See H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986) ("The district court's discretion under Rule 24(b)(2) is very broad.").

## DISCUSSION

## I.     Requirement Under Rule 24(c) to Attach Proposed Pleading

The undersigned starts with the requirement under Rule 24(c) that a motion to intervene must "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Proposed Intervenor fails to provide such a pleading, arguing that this requirement is "inapplicable here," because she "seeks intervention to correct misrepresentations made on behalf of High Farms, to seek the disqualification of Farrell Fritz and likely to seek the dismissal of this action."  (Mem. in Supp. at 11.)

This case is a good example of why Rule 24(c) requires that such a document be provided.  As discussed below, Proposed Intervenor purports to assert various "interests" that require her intervention, but she fails to articulate what claim or defense she is propounding to protect those interests.  Even her assertion that she "will likely move to dismiss the action" does not provide any information as to how she proposes to do that, and on what grounds.  (Gwenda Decl. ¶ 61.)  For permissive intervention, this creates an even greater problem because unless Proposed Intervenor sets out her claim or defense, the Court will not be in a position to determine whether she "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).

Proposed Intervenor cites *Bano v. Union Carbide Corp.*, No. 99-CV-11329 (JFK)(HBP), 2005 WL 6800401 (S.D.N.Y. Aug. 12, 2005), *R&R adopted*, 2005 WL 2464589 (S.D.N.Y. Oct. 5, 2005), for the proposition that Rule 24(c) "permits a degree of flexibility with technical requirements" where "the position of the movant is apparent from other filings."  (Mem. in Supp. at 11 (quoting *Bano*, at *14 (quotation and citation omitted).)  However, the court in *Bano* denied the motion to intervene in part because of a failure to comply with Rule 24(c), explaining that "after reviewing all of [the proposed intervenors'] submissions," it could not determine what claims they were asserting, and concluding that "[i]ntervenors' non-compliance with Rule 24(c) [ ] is not a mere technicality, but is fatal to the motion."  *Id.* (citation omitted).

Similarly, without a proposed pleading here, the Court and Plaintiff cannot examine exactly what Gwenda is proposing to do as an intervenor.  Moreover, she has not inadvertently failed to submit a required document, nor is she seeking leave to supplement her motion with such a pleading.  Her failure to state plainly and clearly her proposed claim or defense was a clear choice, which serves to obfuscate her position.

Accordingly, the undersigned finds that Proposed Intervenor's failure to comply with Rule 24(c) is not a mere technicality and respectfully recommends that this failure alone forms a basis to deny the Motion.

## II.     Rule 24(a) Intervention as of Right

Despite Proposed Intervenor's failure to comply with a basic requirement of Rule 24(c), the undersigned will nevertheless attempt to analyze what she appears to be arguing.

To intervene as of right, an applicant must show that: (1) she has an interest relating to the property or transaction that is the subject of this litigation; (2) disposing of this action without her participation may as a practical matter impair or impede her ability to protect her interest; and (3) her interests are not adequately represented by an existing party. *See MasterCard Int'l Inc. v. Visa Int'l Serv. Assoc., Inc.*, 471 F.3d 377, 389 (2d Cir. 2006). In addition, she must demonstrate that her motion is timely. *Id.* An applicant must show that all of these elements are "satisfied to qualify for intervention as of right." *Wash. Elec. Coop.*, 922 F.2d at 96 (citation omitted); *see also New York v. Scalia*, No. 20-CV-1689 (GHW), 2020 WL 3498755, at *1 (S.D.N.Y. June 29, 2020) (holding that intervention as a matter of right was improper when proposed intervenors "have not carried their burden to show" that all of the elements of Rule 24(a)(2) were met).

### A.     Proposed Intervenor's Asserted Interests

"[T]he putative intervenor [must] have an interest in the proceeding" that is "direct, substantial, and legally protectable. An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Wash. Elec. Coop.*, 922 F.2d at 96-97 (citations omitted).

Gwenda asserts that she has several interests in this action. First, she claims that "[a]s Trustee of the JDH 2012 [Irrevocable] Trust, which owns 24.5% of High Farms, [she] clearly has an interest to [sic] the property and transaction that is the subject of this action." (Mem. in Supp. at 9.) She also

claims a direct interest "in ensuring that the material misrepresentations made to the Court on behalf of High Farms are corrected," "in the determination as to whether or not it is in High Farms' interest to prosecute this action," and "in preventing Laurence from continuing to exploit this litigation for his personal advantage." (*Id.* at 9.) According to Gwenda, Laurence misrepresented High Farms' ownership and falsely claimed that he is High Farms' managing member. (*Id.* at 5-6.) Gwenda also maintains that Laurence is seeking "to advance [his] personal and economic interests" by wrongly using the discovery process here to obtain information that "is relevant only to the" state court proceedings. (*Id.* at 6-7.)

None of these purported interests is "direct, substantial, and legally protectable."

While Gwenda may be a trustee of the JDH 2012 Irrevocable Trust, she is not seeking to intervene on behalf of that trust. All her filings identify her only in her personal capacity, not as a representative of the trust. (*See, e.g.*, Notice of Motion to Intervene and Disqualify Counsel, Dkt. 96 at 1 ("Gwenda Higgins will move this Court . . . for an Order: (a) permitting Gwenda Higgins to intervene in this action . . . .").) Any interest that she may have in "the property and transaction" at issue here—presumably the $285,000 plus interest that Plaintiff is seeking from Defendant in repayment of a loan—would only be through a member of High Farms, such as the JDH 2012 Irrevocable Trust. Gwenda herself is not—and does not claim to be—a member of High Farms.

Gwenda's lack of membership in High Farms also means that she does not have a legally protectable interest in whether this litigation should proceed, despite her stated interest "in the determination as to whether or not it is in High Farms' interest to prosecute this action." (Mem. in Supp. at 9.) A member of a limited liability company may have an interest in a lawsuit instituted by that company. *See Morris & Judith Fam. P'ship, LLC v. Fidelity Brokerage Servs. LLC*, 329 F.R.D. 148, 150 (S.D.N.Y. 2019). Indeed, the Court left open the possibility that if another member of High Farms tried to dismiss this suit, "the court would have to decide whether that would override Laurence

8

Higgins' desire to maintain it." (MTD Order at 9.) However, because she is not a member of High Farms, Gwenda cannot assert such an interest. *See Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Assoc.*, No. 17-CV-7684 (VEC), 2018 WL 3655781, at *5 (S.D.N.Y. Aug. 2, 2018) (finding that a party does not have an interest sufficient to intervene if it "has no claims to bring" on its own). She also cannot assert other rights in High Farms that are limited to actual members. *See, e.g.*, *Herman v. Herman*, 122 A.D.3d 506, 507 (N.Y. App. Div. 2014) (holding that individuals who were not members of a limited liability company "lacked standing to bring [ ] derivative claims").

Moreover, while Gwenda may have an "interest," colloquially speaking, in how this litigation proceeds, she lacks a legally protectable interest in the conduct of this litigation, such as correcting any misrepresentations made to the Court on behalf of High Farms, or preventing Laurence from "continuing to exploit this litigation for his personal advantage."

Furthermore, in order to have an interest in the "property or transaction which is the subject of the action," the intervenor must have an interest in "the pleadings in a case as [it] find[s] them." *Wash. Elec. Coop.*, 922 F.2d 94, 97 (citations omitted). An intervenor cannot use Rule 24 to "creat[e]" a "whole new suit[ ]" or to "inject collateral issues into an existing action." *Id.* A party does not take the pleadings as it found them if its motion "would [ ] change[ ] radically" "the present case." *Id.* ("The nature of the action would be transformed from one in which one party sues another on a contractual claim for damages in the sum of $924,208.71, to one in which the original plaintiff is joined by another purporting to represent six other signatories to the contract and in which the recovery sought is" approximately $6.2 million.)

Proposed Intervenor seeks to inject collateral issues—including High Farms' disputed ownership structure and Laurence's motivations in this lawsuit—that do not pertain to the central issues of whether the parties entered into a loan agreement and whether that loan was repaid. Thus, these interests are not in the "property or transaction which is the subject of the action" and, therefore,

9

cannot sustain a Rule 24(a)(2) motion. *See Baliga ex rel. Link Motion Inc. v. Link Motion Inc.*, No. 18-CV-11642 (VM)(DF), 2020 WL 5350271, at *22 (S.D.N.Y. Sept. 4, 2020) ("While [the intervenor's] proposed claims are obviously directed to the claims that [plaintiff] has pleaded, they are 'related' to [plaintiff's] claims only in the sense they seek to turn them on their head, casting [plaintiff] as a wrongdoer who [has] tortiously interfered with the Company's business by his very act of commencing the suit.").

Gwenda's interests are also insufficient because, as Plaintiff rightly contends (Mem. in Opp. at 15), her "stated intention to protect the judicial system against abuse" is not a "legally protectable interest" under Rule 24(a)(2). *N.Y. News, Inc. v. Kheel*, 972 F.2d 482, 486 (2d Cir. 1992) (holding that "remote interest in a streamlined, abuse-free judicial system is not a 'significantly protectable interest' within the meaning of Rule 24(a)(2)").

Finally, Proposed Intervenor's purported interests fail to satisfy Rule 24(a)(2) because they are contingent on rulings from other courts. For example, Gwenda claims an interest in this litigation through Madeline's estate. (*See, e.g.*, Mem. in Supp. at 5-7, 9.) The issue of whether Madeline's estate is a member of High Farms is yet to be resolved by the New York Supreme Court. (Frommer Decl. ¶ 20.) Similarly, to the extent that Gwenda contends that she has an interest as a trustee of the JDH 2012 Irrevocable Trust, the issue of whether she is the sole or co-trustee is also being litigated in state court. (*See id.* ¶ 21.) As such, Proposed Intervenor's interests are contingent on the decisions of other courts and, therefore, too remote to justify intervention here. *See Eddystone Rail Co. v. Jamex Transfer Servs., LLC*, 289 F. Supp. 3d 582, 593 (S.D.N.Y. 2018) ("That the Proposed Intervenors' interest turns on another court's prospective ruling underscores the contingent nature of the Proposed Intervenors' interest.").[2]

---

[2] Gwenda also appears to assert prejudice to Madeline's estate as a result of Laurence's actions as another interest sufficient to grant the Motion. (*See, e.g.*, Mem. in Supp. at 9.) Presumably, she asserts this interest as

Accordingly, Proposed Intervenor has not stated a legally protectable interest under Rule 24(a)(2), and the Motion should be denied.

**B.  Whether Gwenda's Interests Will Be Impaired**

Even if Gwenda had articulated legally protected interests, she does not explain how her interests would be impaired if she were not allowed to intervene.  "To demonstrate impairment, the proposed intervenor must show that his interest may be impaired by the disposition of the action, which can be satisfied by asserting that as a practical matter, an adverse decision may compromise the party's claims." *Royal Park Invs. SA/NV*, 2018 WL 3655781, at *5 (quotation, citation, and alterations omitted).

Gwenda's "interests" in High Farms could only flow from her connection to the JDH 2012 Irrevocable Trust and Madeline's estate (*see* Mem. in Supp. at 9; Reply Mem. at 7-9), but issues pertaining to those entities' ownership and control of High Farms are being litigated in state court. Resolution of this lawsuit does not require a determination of those issues.  Therefore, "there is no reason to believe that [intervenor's] interests will not be adequately protected by the parallel state court proceedings." *In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 301 (2d Cir. 2003).  To the extent Proposed Intervenor contends that her interests will be impaired because Laurence can use discovery material obtained in this action in the state court actions, she has recourse to procedures in the state actions, such as introducing evidence there to show Laurence's allegedly improper actions, or moving to exclude evidence.

Thus, Gwenda's purported interests will not be impaired, because what the Court does in this action "will not constrain [her] from vigorously asserting" her position regarding High Farms' proper ownership structure in the state court proceedings. *Eddystone Rail Co.*, 289 F. Supp. 3d at 594.

---

"the sole beneficiary" of Madeline's estate.  (*Id.*)  However, Gwenda does not explain how her status as beneficiary gives her, rather than the executor, the authority to assert the interests of Madeline's estate.

## C.    Whether Proposed Intervenor's Interests Are Adequately Represented

"The burden of showing that the [p]roposed [i]ntervenors' interests are not adequately protected by an existing party is 'minimal.'"  *Id.* (quoting *CBS Inc. v. Snyder*, 136 F.R.D. 364, 368 (S.D.N.Y. 1991)).  In general, "[t]he burden of persuasion to demonstrate adequacy of representation falls on the party opposing intervention."  *CBS Inc.*, 136 F.R.D. at 368 (citation omitted).  However, where a litigant and a proposed intervenor "have the same ultimate objective," the Second Circuit "demand[s] a more rigorous showing of inadequacy."  *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001) (citation omitted).  In such instances, there is a "presumption of adequate representation" that "the movant to intervene must rebut."  *Id.* at 179-80.

Proposed Intervenor and Defendant share the same objective in this suit: dismissal.[3]  (Gwenda Decl. ¶ 61.)  Therefore, there is a presumption that Defendant adequately represents Gwenda's interests.  This presumption attaches even though Gwenda and Defendant may have different reasons for their shared objective.  *See Wash. Elec. Coop., Inc.*, 922 F.2d at 98 ("a putative intervenor's interest is not inadequately represented merely because its motive to litigate is different from that of a party to the action" (citation omitted)).  Proposed Intervenor fails to address, let alone rebut, the presumption that Defendant adequately represents her interests.  *See City of Syracuse v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 20-CV-6885 (GHW), 2021 WL 23326, at *4 (S.D.N.Y. Jan. 2, 2021) (finding that intervention was not proper when proposed intervenors "have not rebutted the presumption of adequate representation").  Proposed Intervenor points out that Defendant is acting *pro se*, but quality of legal representation is not the type of inadequacy of representation relevant to Rule 24(a).  *See, e.g., United States v. Yonkers Bd. of Educ.*, 902 F.2d 213, 218 (2d Cir. 1990) ("If disagreement with an actual

---

[3] Gwenda also states that her "interest in this action is exactly the same as Laurence's interest, *i.e.,* through their fiduciary capacities for members of High Farms," but she also states that Laurence is not protecting Gwenda's interests or that of Madeline's estate.  (Reply Mem. at 8.)

party over trial strategy . . . were sufficient basis for a proposed intervenor to claim that its interests were not adequately represented, the requirement would be rendered meaningless.").

Thus, Proposed Intervenor fails to show that Defendant does not adequately represent Gwenda's interests.

### D.    Whether the Motion is Timely

The Second Circuit has identified certain factors that courts should consider in making a determination of whether a motion to intervene is timely: "(a) the length of time the applicant knew or should have known of his interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to applicant if the motion is denied; and (d) presence of unusual circumstances militating for or against a finding of timeliness." *United States v. New York*, 820 F.2d 554, 557 (2d Cir. 1987) (citation omitted).  The undersigned will consider and weigh these factors.

### 1.    The Length of Time

Because there is no set length of time in which a proposed intervenor must file a motion after learning that an action implicates her interest, *see United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994) (stating that "[t]imeliness defies precise definition"), it is the applicant's burden to show that the time period is reasonable under the circumstances.  *See Kamdem-Ouaffo*, 314 F.R.D. at 134.

Gwenda sets forth different dates on which she allegedly learned that this suit implicated her interests.  In the Memorandum in Support, she states that "the full extent of how [her] interests were being prejudice [sic] by Laurence became apparent when she became aware of Laurence's abuse of [Defendant's] deposition, which occurred on August 21, 2019, and was not known to Gwenda until several months later."  (Mem. in Supp. at 8.)  Gwenda does not state when or how that knowledge occurred.  She also fails to explain how knowledge of her interests in this lawsuit was contingent on learning of Laurence's actions at the deposition, stating only that Laurence "exploited the fact that

[Defendant] was unrepresented by counsel," and "spent the majority of the deposition asking [Defendant] questions that relate to the New York Proceedings and the Connecticut Proceeding." (*Id.* at 6-7.) She also provided no reason for waiting until she learned the "full extent" of how her interests were being prejudiced before taking action to intervene.

In the Reply Memorandum, Proposed Intervenor also describes an earlier event as triggering her realization that this action implicated her interests, claiming that she "did not become aware of Laurence's misrepresentations to the Court regarding High Farms' ownership until some time after Laurence's March 26, 2019 letter to the Court." (Reply Mem. at 4.) Again, Proposed Intervenor's argument lacks specificity as to the date of her knowledge and how learning of statements in the letter led to her becoming aware of her interests. While she does not specify which statements in the letter (Dkt. 61) constitute the misrepresentations that alerted her to her interest in this litigation, to the extent that they involved Plaintiff's exclusion of Madeline's estate from its description of ownership interests in High Farms, such statements mirror the allegations in the Amended Complaint already filed on May 15, 2018. (*See id.*; *compare* Am. Compl. ¶¶ 13-16.) Proposed Intervenor does not explain why she became aware of these "misrepresentations" only once they were made in a letter to the Court but not when they were made in the Amended Complaint almost a year earlier.

Timeliness of a motion to intervene is measured from the date an intervenor had sufficient notice that her interest in the lawsuit was direct, substantial, and legally protectable, not the date on which she believes her cause of action accrued. *See, e.g.*, *Ricci v. DeStefano*, No. 4-CV-1109 (JBA), 2010 WL 9113871 at *5 (D. Conn. May 12, 2010). Proposed Intervenor knew or should have known that this lawsuit implicated her purported interests by the time the Amended Complaint was filed on May 15, 2018. For example, she claims that she needs to intervene to protect the interests of Madeline's estate, "for which [Proposed Intervenor] is the sole beneficiary" and that Laurence deliberately omitted Madeline's estate as an owner of High Farms "in an attempt to misappropriate millions of

14

dollars from" it.  (Mem. in Supp. at 9.)  This omission was already evident in the Amended Complaint.  (*See* Am. Compl. ¶¶ 13-16.)  Proposed Intervenor also knew about this action at least by "late 2017," when it became part of an overall attempt, which included Gwenda, to settle all of these disputes.  (Reply Mem. at 4 ("To begin with, as conceded by Laurence, the parties began global settlement negotiations in late 2017, with this action becoming a part of such negotiations no later than December 2017." (citation omitted)).)  Given that Proposed Intervenor was part of these settlement discussions, it is reasonable to infer that she was aware of Plaintiff's allegations.  Even if she was not actually aware of Plaintiff's allegations about High Farms' members, she could have easily discovered them since the Amended Complaint was publicly available, which Proposed Intervenor, a lawyer admitted in New York (Dkt. 106-2), should have known.  *See MasterCard Int'l*, 471 F.3d at 390 (holding the motion to intervene untimely when intervenor had been in contact with a party throughout the course of the litigation, and the complaint and other filings were "publicly available for anyone to access").

Thus, Proposed Intervenor delayed 22 months in filing the Motion, an unreasonable length of time.  *See Baliga*, 2020 WL 5350271, at *18 ("[T]his court agrees with [the plaintiff] that a delay of 15 months—or even 10 and a half months—from when the action was commenced can be sufficient to render the motion untimely." (citation omitted)).

Proposed Intervenor attempts to explain the delay by stating that she chose to focus on the "global settlement negotiations" that she and Laurence entered into "in late 2017" rather than "incur the expense of an intervention motion at that time" (Reply Mem. at 4), and that those negotiations ended in March 2020 (Mem. in Supp. at 8).  Proposed Intervenor provides no support—nor does any exist—for the contention that it is reasonable for an intervenor deliberately to wait until exhausting settlement discussions before moving to intervene.[4]

---

[4] Proposed Intervenor also concedes, without explanation, that when she learned of the contents of the March 26, 2019 letter, she deliberately delayed and "made the difficult decision to withhold from attempting to intervene." (Reply Mem. at 4, 5.)

Proposed Intervenor contends that the timeliness of her intervention should be measured against when she filed a letter with the Court on November 15, 2019 attempting to raise these same issues. (*See* Reply Mem. at 6 (citing Dkt. 73).) Even if that letter were sufficient to express her intent to intervene, it was still filed eighteen months after the Amended Complaint provided constructive notice of Proposed Intervenor's interest. *See Kamdem-Ouaffo*, 314 F.R.D. at 135 (finding that a motion to intervene was untimely when the proposed intervenor had nineteen months of constructive notice). Moreover, Proposed Intervenor was specifically informed by the Court that she needed to file a motion to intervene if she wanted to raise these issues (Dkt. 75), yet she delayed another four months before seeking leave to file the Motion.

The undersigned finds that the length and unreasonableness of the delay in filing the Motion weighs against a finding of timeliness.

### 2.    Prejudice to the Existing Parties

In evaluating whether there is prejudice to the existing parties, "[p]articular focus must be had on the posture of th[e] litigation at the time the motion to intervene is made." *Pitney Bowes*, 25 F.3d at 72 (citation omitted). By the time the Motion was filed, the litigation had been pending for more than four years, the parties had already completed all discovery (Dkt. 76), and Plaintiff had filed its motion for summary judgment (Dkt. 90). Thus, at this late stage in the litigation, the parties would be prejudiced if the Motion were granted. *See Schonfeld v. City of N.Y.*, 14 F. App'x 128, 131 (2d Cir. 2001) ("At th[e summary judgment] stage of the proceedings, the parties would have been prejudiced if further delay occurred to accommodate [the proposed intervenor]."); *Apple v. Atl. Yards Dev. Co.*, No. 11-CV-5550 (JG), 2014 WL 5450030, at *12 (E.D.N.Y. Oct. 27, 2014) (finding that a motion to intervene prejudices the existing parties where the litigation had been pending for almost three years and fact discovery had concluded).

In addition, should Proposed Intervenor be permitted to intervene, she will add multiple collateral issues to the litigation. At present, the primary issue in this case is whether Plaintiff and Defendant entered into a loan agreement. The Motion asks this Court to consider the issue of High Farms' disputed ownership structure, and also seeks an investigation of Laurence's motives and his conduct of the litigation. These investigations would likely be fact- and time-intensive, requiring additional discovery, and, thus, would prejudice the existing parties. *See SEC v. Callahan*, 2 F. Supp. 3d 427, 438 (E.D.N.Y. 2014) (finding that the timeliness requirement is not met when proposed "intervenor[s] attempt to introduce collateral issues in a proceeding" (quotation and citation omitted)); *Beam v. HSBC Bank USA*, No. 2-CV-682E (SR), 2004 WL 944522, at *2 (W.D.N.Y. Mar. 30, 2004) (holding that proposed intervenors' motion would prejudice the parties because "it would force them to expand the scope of this case to include issues collateral" to the main dispute and would require "additional motion practice and . . . additional discovery").

Prejudice to the existing parties is a factor that also weighs against a finding of timeliness.

### 3. Prejudice to the Proposed Intervenor

Proposed Intervenor makes vague statements about the prejudice she will suffer if she is not permitted to intervene. In support of the prejudice that she claims she will suffer, she states that the "motion is premised entirely on the prejudice she, and Madeline's Estate, would incur if Laurence was permitted to continue exploiting this action for his personal gain." (Reply Mem. at 7; *see also id.* at 6 ("If High Farms' currently pending motion for partial summary judgment is denied, or if it does not resolve the entire litigation, Laurence's continued prosecution of this action through the attorneys representing him in the New York Proceedings will continue to prejudice other members of High Farms.").)

This argument, as many of the other arguments regarding Gwenda's purported interests, focuses on her attempt to stop this litigation. In the absence of a legally cognizable interest—which

Proposed Intervenor has declined to state in the form of a claim or defense—she can assert no prejudice in being excluded from intervening in this case.  She also has not explained how her active participation in the state court actions is insufficient to protect whatever legal interests she may have.  *See In re Bank of N.Y. Derivative Litig.*, 320 F.3d at 301 ("Furthermore, contrary to [proposed intervenor's] assertions, there is no reason to believe that the shareholders' interests will not be adequately protected by the parallel state court proceedings . . . .").

Proposed Intervenor will suffer minimal, if any, prejudice, and this factor also weighs against a finding of timeliness.

### 4.    Presence of Unusual Circumstances

Although Proposed Intervenor states that the presence of "any unusual circumstances militating for or against a finding of timeliness" is a factor that courts consider in evaluating whether a Rule 24(a)(2) motion is timely (Mem. in Supp. at 8 (quotation and citation omitted)), she does not identify any such circumstances.  Plaintiff also contends that "[t]here is nothing 'unusual' here." (Mem. in Opp. at 13.)

\*          \*          \*

Having weighed all the relevant factors, the undersigned finds that Proposed Intervenor's motion to intervene as of right under Rule 24(a)(2) is untimely and should be denied on that basis.

Even if it were considered timely, Proposed Intervenor has failed to state an interest relating to the property or transaction that is the subject of the action.  And even if such an interest were identified, she has not shown how her interest will be impaired or inadequately represented by the existing parties.  Proposed Intervenor's failure to meet these requirements also constitutes an additional basis to deny the motion to intervene as of right under Rule 24(a)(2).

## II. Permissive Intervention

Absent intervention as of right, the Court may permit intervention here if Proposed Intervenor satisfies Rule 24(b)(1). "In exercising its discretion" under Rule 24(b)(1), "the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *H.L. Hayden Co. of N.Y.*, 797 F.2d at 89 (quotation, citation, and alteration omitted). Undue delay or prejudice to the original parties' rights is "[t]he principal guide in deciding whether to grant permissive intervention." *Pitney Bowes*, 25 F.3d at 73 (citation omitted).

"Additional relevant factors include the nature and extent of the intervenors' interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *H.L. Hayden Co. of N.Y.*, 797 F.2d at 89 (quotations and citation omitted).

Like Rule 24(a), Rule 24(b) also requires a motion to intervene to be "timely," and as explained above, the Motion was not. Proposed Intervenor unduly delayed in filing the Motion and, in so doing, prejudiced the existing parties. Accordingly, the Motion should be denied as untimely under Rule 24(b). *See Pitney Bowes*, 25 F.3d 66 at 74 (holding that "[t]he district court's finding that [proposed intervenor's] application was untimely for purposes of intervention as of right applies as well to permissive intervention").

In addition, Proposed Intervenor does not explain how she will significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented. She merely states that "one of the main purposes of [her] motion to intervene is to correct the factual record, as the Court has relied on Laurence's multiple misrepresentations as to the ownership of High Farms." (Mem. in Supp. at 10.) However, the alleged misrepresentations Proposed Intervenor seeks to correct are collateral to the factual and legal issues

presented in this suit regarding the single financial transaction between Plaintiff and Defendant. *See Eddystone Rail Co.*, 289 F. Supp. 3d at 595 (denying a permissive motion to intervene because, *inter alia*, the extraneous issues proposed intervenor sought to litigate did not bear on the ultimate issue and could be resolved in a pending state court action). Because the issues she seeks to develop are not central to the underlying factual issues in the suit, and the legal questions she seeks to inject are not those presented by the suit, there is no basis for permissive intervention.

Accordingly, the undersigned respectfully recommends denying the motion for permissive intervention under Rule 24(b).

## III.    Motion to Disqualify Counsel

Proposed Intervenor seeks, "to the extent that she is permitted to intervene, to disqualify Farrell Fritz P.C. . . . from representing High Farms in this action." (Mem. in Supp. at 1.) Because of the recommendation that the motion to intervene be denied, her motion to disqualify counsel should also be denied.

## <u>CONCLUSION</u>

Based on the foregoing, the undersigned respectfully recommends that the Motion to Intervene and Disqualify Counsel be denied.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*
_____

PEGGY KUO
United States Magistrate Judge

Dated:    Brooklyn, New York
          February 27, 2021