UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------- X
HIGH FARMS, LLC,

                Plaintiff,

      -against-

GWENDOLYN KING,

                Defendant.
------------------------------------------------------- X

**REPORT AND RECOMMENDATION**
1:16-cv-00736 (NGG)(PK)

**Peggy Kuo, United States Magistrate Judge:**

    Plaintiff High Farms, LLC ("Plaintiff" or "High Farms"), brings this action against Defendant Gwendolyn King for breach of contract, repayment of a loan, unjust enrichment, and constructive trust. (Am. Compl., Dkt. 50.) On April 1, 2020, Plaintiff filed a Motion for Partial Summary Judgment ("Motion," Dkt. 90), seeking summary judgment on its cause of action for repayment of a loan. (Am. Compl. ¶¶ 45-49.) On June 29, 2020, the Honorable Nicholas G. Garaufis deemed the Motion unopposed and referred it to the undersigned for a report and recommendation. (Dkt. 113.) For the reasons set forth below, the undersigned respectfully recommends that the Motion be granted.

## FACTS

    The following facts are taken from the Declaration of Hillary A. Frommer in Support of Plaintiff's Motion for Partial Summary Judgment ("Frommer Decl.," Dkt. 90-1), the Declaration of Laurence Higgins in Support of Plaintiff's Motion for Partial Summary Judgment ("Higgins Decl.," Dkt. 90-12), the Declaration of Ania Kowalik in Support of Plaintiff's Motion for Partial Summary Judgment ("Kowalik Decl.," Dkt. 90-21), and the accompanying exhibits.[1]

---

[1] Plaintiff submitted only excerpts from Defendant's deposition. The Court directed it to submit the deposition transcript in full (Feb. 24, 2021 Minute Entry), which Plaintiff did on February 25, 2021 ("King Tr.," Dkt. 117).

1

High Farms was established on December 12, 2012 by John D. Higgins ("John") under § 203 of New York's Limited Liability Company Law. (Higgins Decl. Ex. A at 1-2.) It is managed by its members (*id.*) and at all times relevant to this action, maintained a brokerage account with Scottrade at its Garden City, New York branch. (Higgins Decl. ¶¶ 7-9; *see also* Higgins Decl. Ex. B-1, B-2, B-3, B-4, B-5, B-6, B-7.)

On January 13, 2014, Defendant, who is the sister of John's wife Madeline and was living in New York at the time, endorsed and deposited two checks (the "Checks") into her TD Bank account. (Kowalik Decl. Ex. C; Frommer Decl. Ex. 3; King Tr. at 15:24-16:9, 25:23-26:15.) Check number 1013 was for $10,000.00, and number 1015 was for $275,000.00. (Kowalik Decl. Ex. C.) Both Checks were drawn on High Farms' account at Scottrade, dated January 13, 2014, and signed by John. (Kowalik Decl. ¶¶ 5-7; *id.* Ex. C.) The account holder section of each Check states, "HIGH FARMS LLC, JOHN D HIGGINS MBR, 105 High Farms Rd., Glen Head, NY 11545." (*Id.*) This is the address listed in High Farms' articles of organization for accepting service of process by mail. (*Compare id. with* Higgins Decl. Ex. A.) Ania Kowalik—John's daughter-in-law and wife to John and Madeline's son, Laurence Higgins—identified the signature on the Checks as John's (Kowalik Decl. ¶¶ 2-7). Plaintiff's Scottrade account statement shows debit entries on January 14, 2014 of $275,000.00 for Check #1015, and $10,000.00 for Check #1013. (Higgins Decl. Ex. B-7 at 6.)

Defendant admits that she never returned $285,000.00 to High Farms or to John. (King Tr. at 374:10-375:2.)

Prior to January 13, 2014, Defendant had not loaned any money to High Farms. She testified at her deposition that she did not know about High Farms prior to this action. (*See id.* at 28:2-17, 30:5-22, 32:2-23.) In response to Plaintiff's question, "Did you ever loan money to someone and say, This is a loan to you on behalf of John Higgins?" Defendant stated, "I didn't do loans." (Frommer Decl. Ex. 2 at 126:10-13.) In response to the question during her deposition, "Did you ever loan

2

money to High Farms?" Defendant responded, "Never." (King Tr. at 32:24-33:2.)[2] When asked whether she had ever loaned money to John, Defendant testified, "No." (King Tr. at 27:24-25.)

Monthly account statements for Plaintiff's Scottrade account for the period of December 2012 through January 2014 do not show cash income of $285,000.00. (*See* Higgins Decl. Exs. B-1, B-2, B-3, B-4, B-5, B-6, B-7.)

John died on November 5, 2016. (Frommer Decl. Ex. 9.)

## **PROCEDURAL HISTORY**

Plaintiff filed the Complaint on February 11, 2016 (Dkt. 1) and the Amended Complaint on May 15, 2018 (Dkt. 50). Plaintiff asserts four causes of action: (1) breach of contract (*id.* ¶¶ 40-44); (2) repayment of a loan (*id.* ¶¶ 45-49); (3) unjust enrichment (*id.* ¶¶ 50-55); and (4) constructive trust (*id.* ¶¶ 56-59). Defendant answered the Complaint (Dkt. 17) but did not answer the Amended Complaint. Instead, Defendant moved to dismiss the Amended Complaint, arguing improper service and challenging the authority of John and Laurence Higgins to bring and maintain the suit. (Dkt. 54.)

On March 14, 2019, the Court denied the motion to dismiss. (Dkt. 60.)

On December 10, 2019, Plaintiff filed a letter confirming that all discovery had concluded[3] (Dkt. 76) and on January 24, 2020 was granted leave to file a motion for summary judgment. After numerous delays, requests for stays and extensions of time, Defendant was given a deadline of April 30, 2020 to serve any opposition to the Motion. (Mar. 31, 2020 Order.) Plaintiff filed the Motion on April 1, 2020, but Defendant did not serve a response. On June 29, 2020 the Court granted Plaintiff's

---

[2] As part of the Motion, Plaintiff attached excerpts from Defendant's deposition, including the question at the bottom of page 32, "Did you ever loan money to High Farms?" However, no answer was provided, as the next transcript page in the exhibit was page 126. (*See* Frommer Decl. Ex. 2 at ECF pp. 13-14.) In order to resolve this crucial question, the undersigned directed Plaintiff to file the full deposition transcript so that the answer to that question, if any, could be ascertained.

[3] According to Plaintiff's counsel, "Defendant chose not to conduct any discovery of High Farms whatsoever." (Frommer Decl. ¶ 5.)

3

request to deem the Motion unopposed. (Dkt. 113.) That same day, the Honorable Nicholas G. Garaufis referred the Motion to the undersigned for a report and recommendation. (*Id.*)

The Motion seeks summary judgment on Plaintiff's second claim, *i.e.*, repayment of a loan. (Dkt. 90.) It also asks for an award of "damages in the amount of $285,000 plus interest from February 15, 2015."[4] (*Id.*)

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 governs motions for summary judgment and partial summary judgment. Rule 56(a) states:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

"In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (quotations and citation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Rule 56 also applies when the summary judgment motion is unopposed. *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Lue v. JPMorgan Chase & Co.*, 768 F. App'x 7, 10 (2d Cir. 2019) (applying the standards set forth in *Vt. Teddy Bear Co.* after Rule 56(e) was amended

---

[4] As set forth below, the date from which Plaintiff seeks interest is inconsistent.

4

to remove explicit reference to unopposed summary judgment motions). When a motion is unopposed, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Vt. Teddy Bear Co.*, 373 F.3d at 244 (quotation and citation omitted). An unopposed motion will fail "[i]f the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production," or "where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." *Id.* (quotations and citations omitted). In resolving the motion, "the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." *Id.*

## DISCUSSION

This matter is before the Court based on diversity jurisdiction. Defendant is a citizen of Florida and has been living there since 2015. (*See* Frommer Decl. Ex. 2 at 4:4-13, 15:21-16:2.) Plaintiff's members are not citizens of Florida.[5] (*See* Am. Compl. ¶¶ 3-11.) The Checks were drawn on Plaintiff's brokerage account at a New York branch of Scottrade, Defendant deposited the Checks when she lived in New York, and the financial injuries occurred in New York; therefore, the undersigned agrees with Plaintiff and finds that New York law applies. (*See* Pl.'s Mem. of Law in Supp. of its Mot. for Partial Summ. J., "Mem.," Dkt. 90-25 at 8-9.) *See Discovery Grp., Inc. v. Lexmark Int'l, Inc.*, 333 F. Supp. 2d 78, 85 (E.D.N.Y. 2004) (finding that New York law applies where plaintiffs are New York corporations and citizens and defendants were out of state residents because the financial injuries plaintiffs sustained happened in New York).

---

[5] Issues that could affect the membership of High Farms, and therefore the citizenship of High Farms, are pending resolution in various state court actions. (*See* Report and Recommendation on Motion to Intervene, Dkt. 118 at 3 n.1.) However, none of the purported members are citizens of Florida, so the outcome of those proceedings will not affect jurisdiction based on diversity here.

In New York, delivery of a check is presumed to be in payment of a preexisting debt. *In re McNally*, 54 A.D.2d 1103, 1104 (N.Y. App. Div. 1976) (explaining that "[i]n the absence of other proof a presumption arises from the delivery of a check that it was delivered in payment of an antecedent debt" (citing *Koehler v. Adler*, 78 N.Y. 287 (N.Y. 1879)). However, if there is also proof that there was *no* preexisting debt, then delivery of the check is presumed to be a loan. *Id.* ("Evidence of the delivery of such a check, plus proof that there was no existing debt [ ] establishes prima facie a loan of money.")

Plaintiff contends that there is no genuine dispute as to material issues of fact that (1) Plaintiff delivered the Checks to Defendant and (2) Plaintiff did not owe a preexisting debt to Defendant. (*See* Mem. at 9-10.) Plaintiff further contends that Defendant cannot offer any evidence to refute that the Checks were a loan. (*See id.* at 10-14.)

## I. Whether Plaintiff Delivered the Checks to Defendant

There is no dispute that Plaintiff delivered the Checks to Defendant. Plaintiff submitted copies of the two Checks totaling $285,000.00, showing that they were drawn on High Farms' Scottrade account, and signed by John. (Kowalik Decl. Ex. C.)

Defendant identified her signature on the reverse side of the Checks (King Tr. at 201:24-202:2) and confirmed that she deposited the Checks into her bank account (*id.* at 202:3-5). Defendant's TD Bank statement shows a deposit on January 13, 2014 in the amount of $284,900.00. (Frommer Decl. Ex. 3.)[6] Plaintiff's account statement shows two debit entries totaling $285,000.00 on January 14, 2014. (Higgins Decl. Ex. B-7 at 6.) Defendant offers no evidence to dispute that she received and deposited the Checks.

Accordingly, the undersigned finds that there is no genuine dispute as to whether Plaintiff delivered the Checks to Defendant.

---

[6] No explanation is given for why this amount is $100.00 less than the $285,000.00 on the Checks.

6

**II.      Whether the Checks Were in Payment of an Antecedent Debt**

Plaintiff also presented proof that Defendant did not loan money to High Farms prior to January 13, 2014.  In the Motion papers, Plaintiff points to Defendant's statement in her deposition, "I didn't do loans," (Frommer Decl. Ex. 2 at 126:10-13) and her testimony that she had never heard of High Farms, LLC before this lawsuit.  (*See id.* at 28:2-17, 30:5-22, 32:2-23.)  Plaintiff also presented monthly statements for its Scottrade account which show that High Farms did not receive any cash income in the amount of $285,000.00 for the period of December 2012 through January 2014.  (*See* Higgins Decl. Exs. B-1, B-2, B-3, B-4, B-5, B-6, B-7.)

While these pieces of evidence provide support for Plaintiff's contention that Defendant had not loaned money to Plaintiff before January 13, 2014, the record also contained clear evidence that this was true.  In response to direct questions, Defendant testified that she never loaned money to High Farms or John.  (King Tr. at 27:24-25, 32:24-33:2.)

The admissible evidence in the record establishes that Defendant did not loan money to High Farms or John, and therefore, there was no antecedent debt between herself and High Farms or John.  Accordingly, Plaintiff has established *prima facie* that the Checks were a loan.  *See In re Kelligrew*, No. 2186/03, 2008 N.Y. Slip Op. 51010(U), at *10 (N.Y. Surrogate Ct. Mar. 24, 2008) (finding that decedent's delivery of a check was presumed to be a loan when "it [was] undisputed that decedent was not indebted" to the party receiving the check); *cf. In re McNally*, 54 A.D.2d at 1104 (holding that although "[p]etitioner proved that she delivered a check to her mother, the decedent," "[s]he failed to present sufficient probative evidence[ ] to bring into play the alternative presumption that this transaction was a loan to the decedent without which the presumption of a debt owed to decedent survives").

7

### III. Whether the Defendant Can Offer Evidence to Refute that the Checks Were a Loan

Defendant has not filed an opposition to the Motion, so she has not offered any argument or evidence to refute that the Checks were a loan. There are no writings to support the purpose of the Checks, and the memo line on each of the Checks is blank. (Kowalik Ex. C.)

The record contains certain statements by Defendant as to the purpose of the Checks. (King Tr. at 284:10-20, 285:11-24.) However, they concern a conversation that she had with John on January 13, 2014. It was their only conversation about this topic, and no one else was present. (*Id.* at 200:10-22.) John has since died.

Plaintiff argues that under New York's "dead man's statute," Defendant cannot rely on this conversation to oppose summary judgment because "High Farms has not waived the bar of the Dead Man's Statute." (Mem. at 13.) As a result, Plaintiff contends that Defendant cannot refute its *prima facie* showing that the Checks were a loan. (*See id.* at 10-13.)

The dead man's statute provides, in relevant part:

> Upon the trial of an action . . . , a party or a person interested in the event . . . shall not be examined as a witness in his own behalf or interest, or in behalf of the party succeeding to his title or interest against the executor, administrator or survivor of a deceased person . . . , concerning a personal transaction or communication between the witness and the deceased person . . . , except where the executor, administrator, survivor, committee or person so deriving title or interest is examined in his own behalf, or the testimony of the . . . deceased person is given in evidence, concerning the same transaction or communication.

N.Y.C.P.L.R. § 4519. In other words, "[w]hen the witness is interested and his testimony involves a personal transaction with the decedent, his testimony with regard to that transaction is inadmissible, unless the estate has waived the bar of the statute." *Pro Bono Invs., Inc. v. Gerry*, No. 3-CV-4347 (JGK), 2005 WL 2429777, at *7 (S.D.N.Y. Sept. 30, 2005).

The statute bars not only testimony about "a transaction or conversation in which [the interested witness] takes actual part" but also "whatever he derives from the personal presence of the deceased by the use of his senses." *Griswold v. Hart*, 205 N.Y. 384, 394 (N.Y. 1912); *see also Abraham*

8

*v. Leigh*, 471 F. Supp. 3d 540, 556 (S.D.N.Y. 2020) ("'[T]o the extent that [p]laintiff's declaration offers 'knowledge which she has gained by the use of her senses from the personal presence of the deceased,' such knowledge is excluded from consideration in resolving the pending [summary judgment] motion." (quoting *Griswold*, 205 N.Y. at 395) (alterations omitted)).

When a federal court sits in diversity, state laws, such as the dead man's statute, that "'bar[ ] the testimony of certain interested witnesses[ ] must be given effect.'" *Id.* at *556 (quoting *Rosenfeld v. Basquiat*, 78 F.3d 84, 88 (2d Cir. 1996)). On summary judgment, the Court can only consider evidence that would be admissible at trial. Therefore, evidence that is inadmissible at trial by operation of the dead man's statute may not be considered for purposes of summary judgment. *See Abraham*, 471 F. Supp. 3d at 556; *but see Lewin v. Richard Avedon Found.*, No. 11-CV-8767 (KMW)(FM), 2015 WL 3948824, at *10 (S.D.N.Y. June 26, 2015) (stating that courts in this district "are somewhat divided on the question of whether a court, on summary judgment, may consider testimony that might be inadmissible at trial under New York's dead man statute").

The statute also applies where, as here, the decedent holds an interest in a corporate defendant. For example, in *Herrmann v. Sklover Group, Inc.*, the Appellate Division explained that the corporate defendant "may invoke the Dead Man's Statute" when the decedent "was not merely an officer of [the corporate defendant] but also owned 1,000 of the corporation's 1,100 shares (currently held by his estate)." 2 A.D.3d 307, 307 (N.Y. App. Div. 2003).

Defendant is an "interested person" because she has a direct financial stake in whether the Checks are considered a loan. *See Pro Bono Invs., Inc.*, 2005 WL 2429777, at *7 (party with "a direct financial interest in the enforcement of the Note" is an interested party for the purpose of the dead man's statute).

Defendant's acceptance of the Checks—and subsequent depositing of the money into her bank account—constitutes "a personal transaction or communication" with John, the decedent. *See*

9

*Athineos v. Andromeda Invs. Co.*, No. 13-CV-5076 (CM), 2015 WL 6467842, at *7 (S.D.N.Y. Oct. 23, 2015) (holding that plaintiffs' conversations with decedents in which decedents allegedly promised to pay for plaintiffs' living expenses were a "personal transaction").

Defendant does not present any evidence of a waiver by either John's estate or Plaintiff, nor is there such evidence in the record. Plaintiff has not "opened the door" by relying on any statements by John. Plaintiff has also not sought to introduce any portion of Defendant's testimony about the transaction with John or Plaintiff.[7] *See In re Kelligrew*, 2008 N.Y. Slip Op. 51010(U), at *10 ("Therefore, the court concludes that, by introducing this specific portion of [the interested party's] pre-trial examination which references the subject transaction, petitioner waived the protection of CPLR 4519 . . . ."). Taking Defendant's deposition does not itself constitute a waiver. *See Phillips v. Joseph Kantor & Co.*, 31 N.Y.2d 307, 313 (N.Y. 1972) ("The executor does not waive rights under the statute by taking the opponent's deposition.").

Because all its conditions are met, the dead man's statute applies to bar Defendant's testimony about her January 13, 2014 conversation with John.

Without evidence of what John said about the Checks, there is no evidence on the record before this Court to rebut the presumption that the money given to Defendant was a loan. Because there is no evidence in opposition to Plaintiff's *prima facie* showing, the Checks constituted a loan. *See In re Kelligrew*, 2008 N.Y. Slip Op. 51010(U), at *10 (holding that because the party receiving the check failed to rebut it, "the presumption that the check represented a loan from decedent [ ] must prevail"). Accordingly, the undersigned respectfully recommends that summary judgment be granted on Plaintiff's second cause of action, repayment of a loan.

---

[7] Plaintiff did not waive the dead man statute's protections when it submitted the entire transcript of Defendant's deposition because it was asked to do so by the Court.

**IV.     Damages and Interest**

Plaintiff requests damages in the amount of $285,000 plus interest.  (*See* Mem. at 14.)

While the amount of the loan is not in dispute, the Motion does not contain any evidence of the terms of the loan.  Plaintiff does not state what interest rate it seeks and is inconsistent as to the day from which interest should start running.  On page 2 of the Memorandum, Plaintiff writes that the "interest should run from February 24, 2015, which is the date Defendant closed on the sale of her New York home and acquired sufficient funds to repay at least a portion of that loan."  However, on page 15, it asks that interest "run[ ] from February 25, 2015."  There is also no evidence of any repayment terms, including when the loan must begin to be repaid.

The Amended Complaint alleges various terms of the loan.  Specifically, it states that Plaintiff's loan to Defendant "would accrue interest at an annual rate of 2%" and that "Defendant would repay the outstanding principal and accrued interest on the loan" when she sold her house in New York.  (Am. Compl. ¶ 27.)  Plaintiff does not cite to the Amended Complaint in support of its request for interest in the Motion.  Nor can it, as no admissible evidence has been adduced to support these allegations.  *See Niedziejko v. Del. & Hudson Ry. Co.*, No. 18-CV-675 (GTS)(CFH), 2019 WL 1386047, at *9 n.22 (N.D.N.Y. Mar. 27, 2019) ("[A]lthough Plaintiff cites exhibits to his Complaint, that pleading was not verified and thus is not admissible evidence on a motion for summary judgment.").[8]

Absent this information, the undersigned declines to speculate as to the application of loan repayment terms, or of any rule or statute, and, accordingly, respectfully recommends that interest not be awarded.

---

[8] To the extent Plaintiff's request for prejudgment interest is pursuant to New York C.P.L.R. § 5001, there is no citation to it in either the Motion or the Amended Complaint, or any discussion of its applicability.

11

**CONCLUSION**

Based on the foregoing, the undersigned respectfully recommends that Plaintiff's Motion for Partial Summary Judgment be granted and that judgment be entered against Defendant in the amount of $285,000.00, but that no interest be awarded.

Plaintiff is directed to serve a copy of this Report and Recommendation on Defendant and file proof of service on the docket by **March 3, 2021**. Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         February 28, 2021